Gerald B. JERNIGAN, et ux., et al., Appellants,

v.

Ed PAGE and Wife, Evelyn Page, Appellees.

No. 13–82–239–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 30, 1983.

Rehearing Denied Dec. 22, 1983.

Thomas M. Schumacher, Corpus Christi, for appellants.

Dean Patton, Morrill & Patton, Beeville, for appellees.

Before UTTER, BISSETT and GONZA-LEZ, JJ.

### OPINION

UTTER, Justice.

Appellees brought this action in trespass to try title and for lost rent and profits. Appellants then filed a counterclaim, alleging violations of the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA), Chapter 17, TEX.BUS. & COM. CODE ANN. (Vernon Supp.1977). The trial court, after hearing the evidence, directed a verdict in favor of appellees on both the trespass to try title and DTPA claims. In answering special issues which were submitted to it, the jury determined that (1) appellees were not entitled to recover damages for lost rent and profits from appellants, and, (2) that the DTPA counterclaim was not brought in bad faith or for the purpose of harassment; therefore, the trial court held that appellees were not entitled to attorney's fees. Appellants appeal from the trial court's granting of the directed verdict; appellees appeal from the jury verdict.

In November of 1974, appellee, Ed Page, by "Contract for Deed," sold approximately

14.85 acres of land to Larry Wendel et ux, Beatrice Wendel, who thereafter divided the tract into separate lots. Some of these lots were sold to appellants, also, by "Contract for Deed", under which Mr. Wendel, as "Seller", agreed to deliver a "good and sufficient general warranty deed" upon payment of the balance due.

In January of 1976, appellees conveyed the tract to the Wendels, receiving in return from them a vendor's lien and a Deed of Trust to secure payment of a promissory note. The Wendels conveyed the lots to appellants in 1975 and 1976, and appellants moved onto the land. The Wendels eventually defaulted on their payments to appellees. In November of 1978, a Trustee's sale was held pursuant to the Deed of Trust; appellees repurchased the land they had conveyed to the Wendels for $15,552.96. Appellees then notified appellants that they could purchase the acreage from appellees for $33,720 in cash or $39,720, if financed. Appellants declined the offer, and appellees brought suit in trespass to try title. Appellants do not dispute the fact that appellees properly recorded their instruments of title but, instead, contend that record-notice is no defense to a DTPA action.

In their first point of error, appellants contend that the trial court erred by directing a verdict on appellants' DTPA counterclaim because one of the grounds relied upon was insufficiency of evidence.

■ "A directed verdict is properly granted only when there is no evidence to raise a fact issue on the material questions presented." *Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978); *U.S. Life Title Company of Dallas v. Amdreen,* 644 S.W.2d 185 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). However, in their motion for directed verdict, appellees contended not only that there was insufficient evidence to warrant submission of the issues to the jury but also that there was no evidence to warrant the submission. Where a motion for instructed verdict is based on independent grounds, but the trial court grants the motion without indicating which ground he relied on, the judgment of the trial court will be

affirmed if any ground is sound. *McKelvy v. Barber,* 381 S.W.2d 59 (Tex.1964); *Goldring v. Goldring,* 523 S.W.2d 749 (Tex.Civ. App.—Ft. Worth 1975, writ ref'd n.r.e.). We have reviewed all of the evidence and find that the motion could properly have been granted on the "no evidence" contention. Appellant's first point of error is overruled.

In their second, third, and fourth points of error, appellants contend that the trial court improperly granted appellees' motion for directed verdict on the DTPA counterclaim because (a) appellants were not estopped from claiming lack of knowledge of appellees' title to the land and (b) there was evidence that appellants engaged in unconscionable action and false, misleading, or deceptive acts or practices.

■ TEX.REV.CIV.STAT.ANN. art. 6646 (Vernon 1969) provides, generally, that a properly recorded grant, deed, or instrument shall be held as notice to all persons of its existence. Thus, a properly recorded deed charges a later purchaser with notice thereof. *First Savings and Loan Association of El Paso v. Avila,* 538 S.W.2d 846 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r. e.); *Robinson v. Humble Oil & Refining Company,* 301 S.W.2d 938 (Tex.Civ.App.— Texarkana 1957, writ ref'd n.r.e.).

■ We have found no indication from the language of the DTPA or from the cases construing it which leads us to believe that it was the intention of the legislature to preclude the recording statute from being a defense to an action under the DTPA. Appellants could have avoided all problems by simply examining the recorded title.

■ Appellants claim that they negotiated with Larry Wendel and obtained from the Wendels a vendor's lien and deed of trust and that appellees foreclosed on the deed of trust and then offered to sell the land back to them for more than twice the foreclosure indebtedness. They allege that these actions by appellees constituted an unconscionable course of action against appellants. Similarly, they allege certain actions by appellees constituted false, mis-

leading, or deceptive acts, including "failing to give [appellants] the opportunity to purchase the tracts of land under the terms and conditions of the Contracts for Deed with Wendel"; "representing that the tracts of land had characteristics and ingredients [sic] (full ownership in Wendel) that they did not have"; and "representing that an agreement (their contracts for Deed with Wendel) included rights and remedies that it did not have." Appellants also argue that their presence on appellees' land was known by appellees all along and that the silence of appellees was a form of misrepresentation. Appellants were not "deceived" by appellees; their loss was caused by their own lack of diligence. Appellants' second, third and fourth points of error are overruled.

■ After both sides had rested and closed, and outside the presence of the jury, appellants sought to tender into the Court's registry the sum of $14,134.96, which was the unpaid balance owed by the Wendels to appellees at the time of default. The foreclosure sale was held in November, 1978; the tender was made in March, 1982. In his argument before the trial court, appellants' attorney conceded that the offer of tender was not included in the pleadings; he stated that the purpose of the tender was not to set aside the foreclosure sale but, rather, to defeat the trespass to try title action. The trial court refused to accept or to consider the tender as a defense to the trespass to try title action.

In their fifth and sixth points of error, appellants contend that the trial court (1) should have accepted the tender; (2) should have, then, directed a verdict in favor of appellants on the trespass to try title action; and, (3) should not have directed a verdict in favor of appellees on the trespass to try title action because the tender defeated appellees' "right and title to the land in question."

Appellants cite several cases in support of their argument that a vendee, or his successor in interest, may defeat the superior title of the vendor by tendering the unpaid balance of the purchase price. However, these cases also held that the vendor had a right to resume his title when the vendee failed to discharge the debt. Appellants do not allege that appellees had no right to reclaim their title or, even, that the title was improperly reclaimed. Appellants were liable only to the Wendels, and appellants never dealt with appellees until after the foreclosure sale. Appellants fifth and sixth points of error are overruled.

### APPELLEES' CROSS APPEAL

In their first cross-point of error in their cross appeal, appellees challenge the evidence supporting the jury's finding that appellees were not entitled to recover rent from appellants for the period of time from November 14, 1978, to the time of trial. In considering such a point, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965), *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L. Rev. 359 (1961).

■ Even though some damage is usually presumed when a trespass is committed, a jury question on whether damages are recoverable, if at all, may be presented in cases where, for example, evidence is adduced that shows that the land was, in fact, benefited by the trespass. *Cage Brothers v. Friedman,* 312 S.W.2d 532 (Tex.Civ.App.— San Antonio 1958, writ ref'd n.r.e.).

■ In the case before us, appellants testified as to having made improvements on the land in question; therefore, the jury could properly have found that appellees were not entitled to lost rents. Appellees' first cross point of error is overruled.

■ In their other cross-points of error, appellees contend that they should have been awarded attorney's fees under Section 17.50(c) of the DTPA because the counterclaim was groundless as a matter of law. In addition, appellees challenge the sufficiency of the evidence to support the jury

findings that the counterclaim was not brought in bad faith or for the purpose of harassment. Our review of the record convinces us that appellants' counterclaim was brought in a good faith attempt to retain land they thought they were paying for as their own. For the same reason, we find that the evidence supports the jury finding that the claim was not brought for the purpose of harassment.

Alternatively, however, appellee argues that the jury answers to the "harassment" and "bad faith" special issues were immaterial because, by rendering the directed verdict against appellants on the DTPA counterclaim, the trial court had rendered the counterclaim "groundless" as a matter of law. Appellees cite no authority for this proposition.

The conduct giving rise to this lawsuit occurred before March of 1979, the time when appellees filed their original petition. "The statutory provisions that govern this case are those that were in effect *at the time* that the alleged deceptive acts occurred." *Riverside National Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). Thus, at all times pertinent to this case, the controlling statute, Section 17.50(c) of the DTPA, stated that:

> "On a finding by the court that an action under this section was groundless and brought in bad faith or for the purpose of harassment the court may award to the defendant reasonable attorney's fees in relation to the amount of work expended and court costs."

This section has been interpreted to mean that, before a defendant in a DTPA action could recover attorney's fees, he must obtain findings *both* that the suit was "groundless" as a matter of law *and* that it was brought in "bad faith" or "for the purposes of harassment" as a matter of fact. *Computer Business Services, Inc. v. West,* 627 S.W.2d 759 (Tex.App.—Tyler 1982, no writ); *Genico Distributors, Inc., v. First National Bank of Richardson,* 616 S.W.2d 418 (Tex.Civ.App.—Texarkana 1981 (writ ref'd n.r.e.).

In the case before us, even if the DTPA action could be deemed "groundless" as a matter of law, appellees have still failed to obtain favorable jury findings on "bad faith" and "harassment" and, thus, are not entitled to attorney's fees. All assignments of error are overruled and the judgment of the trial court is AFFIRMED.