**J.S. FICHTNER, Appellant,**

v.

**Marion RICHARDSON, individually and d/b/a/ Richardson Coach Ltd., Appellee.**

**No. 05–85–00333–CV.**

Court of Appeals of Texas, Dallas.

Jan. 22, 1986.

Rehearing Denied March 7, 1986.

J.S. Fichtner, Dallas, pro se.

Jeffery H. Shore, Dallas, for appellee.

Before AKIN, MALONEY and ZIMMER-MANN [1], JJ.

MALONEY, Justice.

Fichtner brings this appeal from a take nothing judgment entered in his action based on the Texas Deceptive Trade Practices Act (DTPA).[2] Further complaint is made of the trial court's award of attorney's fees to the defendant pursuant to section 17.50(c) of the Act. While Fichtner's points of error are multifarious, he essentially asserts the following errors: 1) the trial court erred in finding that his action was groundless; 2) the trial court erred in submitting issues to the jury inquiring whether his action was brought in bad faith or for the purpose of harassment; 3) the jury's answers to special issues are contrary to the great weight and preponderance of the evidence; and 4) the trial court erred in admitting certain photographs. Finding no merit in any of Fichtner's contentions, we affirm the judgment of the trial court.

---

**1.** Justice Zimmermann approved this opinion prior to his resignation January 15, 1986.

**2.** Unless otherwise stated, all statutory references are to the Deceptive Trade Practices—Consumer Protection Act. TEX.BUS. & COM.CODE ANN. §§ 17.41–17.63 (Vernon Supp.1986).

In August of 1978, Fichtner's 1972 Jaguar automobile was involved in a collision. This case arose as result of certain work performed on this vehicle subsequent to the wreck.

At trial Fichtner testified that he contacted Richardson's paint and body shop, Richardson Coach Builders, Ltd., on the recommendation of a third party. After the parties agreed upon the repairs necessitated by the collision, they further agreed upon additional work to be done on the vehicle. Fichtner stated that he authorized Richardson to repair the collision damage, rework the front end, renovate and dye the interior, and replace the hood (also referred to as the "bonnet").

The vehicle was taken to Richardson's shop shortly after Labor Day 1978 and was returned to Fichtner on November 20, 1978. At this time Fichtner inspected the interior of the vehicle and stated that it appeared to be fine. He took delivery and drove the vehicle for two or three days before returning it to Richardson's shop. Fichtner testified that he returned it because of a wobble in the rear end which he had not experienced prior to the wreck. Fichtner described different complaints concerning the vehicle—primarily problems with the interior, the quality of the paint work, and a recurring difficulty with the hood "popping up" while the vehicle was being driven. He admitted that the hood had been a problem prior to the accident. Fichtner went on to testify as to various times the vehicle was returned to Richardson's shop between November 1978 and April 1979. He testified that he wrote a letter to Richardson, setting forth his various complaints and, after he received no response, he filed this suit in April of 1979.

Richardson denied liability and counterclaimed for attorney's fees and court costs pursuant to section 17.50(c) of the Act. Richardson testified as to the work he performed on Fichtner's vehicle and as to the work he had other people do. He stated that when Fichtner first brought the vehicle to him it had approximately 81,000 miles on it and did not appear to have been well-maintained. Richardson's testimony further reveals that all attempts to remedy Fichtner's complaints after November of 1978 were made with no charge to Fichtner. Many of the parts used in the initial repair work were provided to Fichtner at no charge or at an amount lower than Richardson's actual cost. In Richardson's attempts to alleviate the hood problem, three different hoods were installed on Fichtner's vehicle. Richardson testified that, in each instance, the hood was shown to Fichtner before installation and Fichtner approved its use.

Richardson also testified that between March of 1979 and January of 1983 Fichtner refused to return the vehicle. By 1983 Richardson had closed his shop and the small amount of work he did at that time was done from his home. It was in 1983 when the third hood was installed and the "popping up" problem was solved by replacing a catch mechanism.

The jury answered the special issues relevant to Fichtner's DTPA claim adversely to Fichtner. Additionally, an issue was submitted inquiring whether Fichtner brought his suit in bad faith or for the purpose of harassment. The jury answered this issue affirmatively and found that Richardson had incurred reasonable attorney's fees of $4,500 for the trial and would incur up to an additional $2,100 for any appeals. Upon these findings, the trial court found that Fichtner's DTPA suit was, as a matter of law, groundless.

Fichtner's primary complaint focuses upon the award of attorney's fees to Richardson. His contention is that it was error to submit a special issue to the jury inquiring whether plaintiff's suit was brought in bad faith or for the purpose of harassment. Furthermore, he maintains that the court's finding that the suit was groundless is contrary to the overwhelming weight and preponderance of the evidence. The version of section 17.50(c) applicable to this suit provided:

> On a finding by the court that an action was groundless and brought in bad faith or for the purpose of harassment, the

court may award to the defendant reasonable attorneys' fees in relation to the amount of work expended and court costs.

Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex.Gen. Laws 322, *amended by* Act of April 24, 1975, ch. 62, § 1, 1975 Tex.Gen.Laws 149, *amended by* Act of May 23, 1977, ch. 216, § 1, 1977 Tex.Gen.Laws 600.

▉▉▉ The first question concerning the applicability of this section focuses on who is to make the determination of whether a suit is groundless, brought in bad faith, or for the purpose of harassment. Although a review of the cases in this area shows some conflicts, the consensus appears to be that, in applying the section as written before the 1979 amendments, the courts considered it the jury's province to determine the question of bad faith or harassment, while the court was to decide the question of whether the suit was groundless. The party seeking attorney's fees under this section has the burden to secure affirmative findings on these issues. *Dairyland County Mutual Insurance Company of Texas v. Childress*, 650 S.W.2d 770, 774 (Tex.1983); *Pope v. Darcey*, 667 S.W.2d 270, 274 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Allright, Inc. v. Burgard*, 666 S.W.2d 515, 516 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); *Jernigan v. Page*, 662 S.W.2d 760, 764 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Parks v. McDougall*, 659 S.W.2d 875, 876 (Tex.App.—San Antonio 1983, no writ); *LaChance v. McKown*, 649 S.W.2d 658, 661 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.); *Computer Business Services, Inc. v. West*, 627 S.W.2d 759, 761 (Tex.App.—Tyler 1981, writ ref'd n.r. e.); *Genico Distributors, Inc. v. First National Bank of Richardson*, 616 S.W.2d 418, 420 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *O'Shea v. IBM*, 578 S.W.2d 844, 848 (Tex.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). We conclude that, procedurally, the trial court in the present case properly submitted the question of whether the Fichtner filed suit in bad faith or for the purpose of harassment

to the jury and properly entered its own finding as to the groundlessness of the action.

The next consideration is whether there is sufficient evidence to support these findings. Fichtner's points of error are somewhat unclear but we shall consider them to have raised both "no evidence" points and "insufficient evidence" points, and accordingly, we will evaluate them under each standard of review. When a question is raised regarding factual sufficiency, all of the evidence is considered and reversal is justified only if it appears that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980). In considering a "no evidence" point we must view the evidence in its most favorable light in support of the verdict, rejecting the evidence and inferences contrary to the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696, 698 (1914).

▉▉▉ Since some of the relevent transactions between the parties occurred after the date suit was filed, the question which must first be answered is whether that evidence may be presented to the jury concerning bad faith and harassment. That is, may the jury only consider events occurring before the filing of suit, or may it also take into account evidence concerning events occurring between the time suit was filed and the time of trial. Although cases concerning this section of the DTPA have not expressly passed on this question, we hold that the jury may consider events occurring after the plaintiff's suit is filed.

Our conclusion is based upon two considerations: language contained in the statute and public policy considerations. The Deceptive Trade Practices Act, while allowing the award of attorney's fees for suits brought in bad faith, does not specify what acts constitute bad faith and harassment, or under what circumstances a suit is

groundless. Nor does the Act place a time constraint on when the acts must take place in order to be considered by the jury. Practically, it makes little sense to limit a jury's consideration to only those events occurring before filing suit. To do so would have the potential effect of inhibiting settlement negotiations between the parties. Likewise, it would remove any incentive to resolve the dispute by continuing attempts to rectify the complaint. In our view the jury is entitled to have a complete picture of what has happened between the parties. Furthermore, our holding is not specifically precluded by the statute itself and is further supported by the implicit holdings of other Texas cases.

In *Dairyland County Mutual Insurance Company of Texas v. Childress*, 650 S.W.2d 770, 774 (Tex.1983), the supreme court evaluated an award of attorney's fees to the defendant in a DTPA claim. Although the court determined that the claim for attorney's fees was waived by the defendant's failure to produce evidence or request a jury finding on the question as mandated by TEX.R.CIV.P. 279, in considering the point, the court noted that the original petition contained the DTPA claim, but that portion was deleted in an amended petition. While the court found that the facts did not support a finding of bad faith, it considered occurrences after the filing of the action in making that determination.

More directly, in reviewing the sufficiency of the evidence in *Brunstetter v. Southen*, 619 S.W.2d 557, 561 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.), the appeals court detailed transactions between the parties which took place in the period between the plaintiff's filing of the suit and commencement of trial. These transactions comprised part of the evidence which the court considered sufficient to support the findings that the suit was groundless and brought in bad faith or for the purpose of harassment. A similar analysis was followed by the appeals court in *Pope*, 667 S.W.2d at 273. In that case, Pope had filed a DTPA claim, alleging misrepresentations in a real estate transaction. The defendants counterclaimed for attorney's fees alleging that the action was brought in bad faith and for purposes of harassment. In affirming the trial court's award of attorney's fees to the defendants, the court of appeals discussed the evidence supportive of the jury's findings. A key fact involved the death of an important witness during the pendency of the action. Although Pope realized that the death of this witness left him without proof of his case, he did not dismiss his action until some thirty months later. In each of these cases, events after the filing of suit were considered in determining the sufficiency of the evidence to support a finding that a suit was filed in bad faith or for the purposes of harassment.

■ As related earlier, testimony of the parties is conflicting. The jury was presented with divergent accounts of what work on the vehicle was called for, what was done, and the quality of the workmanship. Both parties presented expert testimony concerning the possible causes of the problems about which Fichtner continued to complain. As the trier of fact, the jury was free to believe or disbelieve the testimony presented. It is within the jury's province to resolve any inconsistencies or contradictions in the testimony and to judge the witnesses' credibility. *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 634 (Tex.Civ.App.—Corpus Christi 1981, no writ). The jury may believe all, part, or none of the testimony in arriving at the finding it concludes is the most reasonable. *United States Fire Insurance Co. v. Biggs*, 614 S.W.2d 496, 497 (Tex.Civ.App.—Amarillo 1981, no writ). The same principle holds true for the court's finding as to the groundlessness of the suit.

■ After having considered all of the evidence, including those transactions occurring during the period between the filing of suit and trial, we hold that the evidence is sufficient to support the jury's finding that the suit was filed in bad faith or for the purpose of harassment and to support the court's determination that it

**484**

was groundless. Therefore, Fichtner's points of error one and two are overruled.

Fichtner's third point of error claims that the jury's answers to issues on the DTPA were against the great weight and preponderance of the evidence. Review of the testimony presented at trial shows that there is evidence to support its answers and the verdict is not so contrary to the weight of the evidence as to be manifestly unjust.

Fichtner's final point of error concerns four photographs admitted into evidence. These photographs of different Jaguars found on the streets were offered by Richardson to allow the jury to compare Fichtner's vehicle with other Jaguars. Initially, the court admitted all four exhibits but later withdrew three because they were photographs of a model of Jaguar different from that of Fichtner's. The fourth photograph was of a Jaguar of the same body style as Fichtner's vehicle. A review of the record reveals that the three withdrawn photographs were never exhibited to the jury.

In determining whether the trial court's action in this instance warrants reversal, the test is whether the error was reasonably calculated to cause and probably did cause an improper judgment. *Bridges v. City of Richardson*, 163 Tex. 292, 354 S.W.2d 366, 368 (1962). Even if we assume that the admission of the photographs was erroneous, the question becomes whether the admission is reversible error.

■ Richardson's testimony concerning these photographs consists of a description of the model of each car and statements that the photographs accurately depicted the cars. He also testified that a cigarette had been placed on one car to provide perspective, and a wrench was placed between the front and back doors of one of the other cars. We cannot see how such testimony about pictures which were not shown to the jury could have caused rendition of an improper verdict. The relevance of the fourth photograph was a question to be determined by the trial court. TEX.R. EVID. 104(b). We hold that no abuse of

discretion occurred in its admission, and we do not perceive any unfair prejudice or any danger that the jury was confused or misled by its admission. TEX.R.EVID. 403. Fichtner's fourth point of error is overruled.

Finding no merit in any of Fichtner's contentions we affirm the judgment.