COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TERESA LOZADA, | § | No. 08-08-00262-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 120th District Court |
| FARRALL & BLACKWELL AGENCY, INC., | § | |
| | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2006-3689) |
| | § | |
| | § | |

**O P I N I O N**

Appellant, Teresa Lozada, appeals the trial court's summary judgment entered in favor of

Farrall & Blackwell Agency, Inc. In four issues on appeal, Lozada claims that the trial court erred

by granting Farrall & Blackwell's amended motion for summary judgment and in denying her

motion for new trial, that the trial court erred in its application of the law of agency to the facts of

the case, that the trial court erred by considering Farrall & Blackwell's untimely amended motion

for summary judgment, and that the trial court erred by not only sustaining Farrall & Blackwell's

objections to her affidavits filed in response to the amended motion for summary judgment, but also

by failing to allow her the opportunity to respond to the objections before ruling thereon. We affirm.

**BACKGROUND**

In August 2003, Jose and Teresa Lozada discussed acquiring life insurance with Michael

Dennis, a retail insurance agent. After filling out the requisite applications, they were each offered

a policy from American General Life Insurance Company (AIG) for $300,000 on October 17, 2003.

Teresa Lozada accepted the policy, but Jose did not as the policy was more expensive than

anticipated. Specifically, Jose's health exam revealed that he suffered from high cholesterol. When

told the quoted policy was comparable with other insurance companies, Jose asked for the costs for different levels of benefits. After being shown different premiums for different benefits, Jose told Dennis that he would think about it and let him know. By January 2004, Jose had still not purchased a policy and Dennis "gave up hope" that he would.

Meanwhile, AIG sent Jose a letter stating the policy offered to him was marked "not taken" as Jose failed to sign the policy, pay the initial premium, and return the policy. The letter concluded that "no coverage has been in force," "no coverage is in effect," and "no claim for benefits will be honored."

After attending a funeral in late February 2004, Jose told Dennis that he wanted to buy the AIG life insurance policy after all. On February 27, 2004, Dennis contacted the insurance broker and wholesaler, Farrall & Blackwell, to inquire as to what could be done to re-activate Jose's lapsed application. Farrall & Blackwell did not know off-hand but they contacted Miles Financial Services (MFS), the independent marketing organization that processed and submitted the insurance application to AIG, and obtained additional forms for Jose to sign.[1] And on February 28, 2004, Jose signed a Short Health Statement, "PAC" form (bank draft authorization), and Acknowledgment of Delivery of Policy.

A few days later, Dennis delivered the documents to Farrall & Blackwell, and Farrall & Blackwell, on March 4, 2004, sent an email to MFS summarizing the request to re-activate Jose's lapsed application. However, MFS could not find the file and requested "something that identified the policy," and Farrall & Blackwell complied. The next day, Farrall & Blackwell faxed the Short Health Statement, PAC form, and Acknowledgment of Delivery of Policy to MFS. That same day,

---

[1] Farrall & Blackwell could not contact AIG directly "because the way they were structured, the brokerages would go to the IMO and the IMO would present that to the [insurance] company."

MFS acknowledged receipt of the documents, responded that the underwriter had been emailed, warned that a new application might be required, and stated that "[f]or sure there will be an amendment needed." Also on that day, Jose died from a massive heart attack. However, on March 8, 2004, an AIG underwriter, apparently unaware that Jose had died, emailed MFS, stating that AIG "will need a new, currently dated Part B to consider reopening and redating."[2] As the previously offered policy was "off the table," a new underwriting process was required, including submission of "Part B," before there would be any offers of binding coverage.

Meanwhile, on March 6 or 7, the funeral home told Lozada that they had contacted AIG and that AIG took the position that Jose was not insured. Thus, on March 17, 2004, Lozada made a death benefits claim on Jose's purported insurance policy. AIG denied the claim on April 1, 2004, referencing the "Not Taken" letter issued on December 23, 2003, and stating that "the policy is not in force and there will be no claim benefits payable." Both AIG and Farrall & Blackwell believed that there was no offer of insurance pending after December 23, 2003. Lozada then filed suit against Farrall & Blackwell on July 20, 2006, for damages, alleging negligence, fraud, promissory estoppel, negligent misrepresentation, and violations of the Deceptive Trade Practices Act (DTPA) and the Insurance Code.

The trial court granted Farrall & Blackwell's amended motion for summary judgment as to all grounds claimed by Lozada, and also determined that Lozada's suit for negligence, negligent misrepresentation, and violations of the DTPA and Insurance Code were barred by limitations. The trial court further denied Lozada's motion for new trial.

**SCHEDULING ORDER**

---

[2] Part B is a form that asks detailed questions about a proposed insured's medical history and current medical conditions.

We begin with a discussion of Lozada's third issue, which asserts that the trial court erred by considering Farrall & Blackwell's amended motion for summary judgment at the summary judgment hearing on May 7, 2008. According to Lozada, Farrall & Blackwell failed to file their motion within the time limits proscribed by the trial court's scheduling order. The trial court's scheduling order, which was signed on November 5, 2007, provided for a trial date of May 5, 2008, and that "[a]ny dispositve motions, including motions for summary judgment, must be heard no later than thirty (30) days prior to the scheduled trial date." Thus, Lozada concludes that Farrall & Blackwell's amended motion for summary judgment filed on April 16, 2008, was untimely.

In response, Farrall & Blackwell assert that the trial court's order granting a continuance for trial on April 9, 2008, nullified any prior imposed deadlines for summary judgment motions. We do not agree.

Prior to 1999, the pretrial deadlines fluctuated with a change of trial setting. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009). However, in 1999, the pretrial discovery rules were amended to establish certain dates for the completion of discovery and to exclude evidence that was untimely disclosed. *Id*. (citing TEX. R. CIV. P. 193.6). Thus, any evidentiary deadlines now no longer fluctuate with the change of a trial setting but are determined by the discovery plan applicable to the case under the current rules and apply to summary-judgment proceedings. *Fort Brown*, 285 S.W.3d at 882 (citing *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1995)); *see also Blake v. Dorado*, 211 S.W.3d 429, 432 (Tex. App. – El Paso 2006, no pet.); *Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 274 (Tex. App. – Austin 2002, pet. denied).

However, Lozada points to nothing in the amended motion for summary judgment that contains new evidence. At the hearing on the motion, the trial court asked the parties whether the amended motion contained any new exhibits or evidence, and Lozada responded that the same

evidence and exhibits attached to the amended motion were already filed with Farrall & Blackwell's original and supplemental motions for summary judgment, and Farrall & Blackwell made the same representation to the court. The only difference between the previously filed motions and the amended motion was that Farrall & Blackwell sought to reconstruct, clarify, and expand on arguments already asserted, and to respond to Lozada's new petition, filed April 4, 2008, which included new causes of action. As no new evidence was attached to the amended motion for summary judgment, *cf. Fort Brown*, 285 S.W.3d at 882; *Blake*, 211 S.W.3d at 432, there was no violation of the evidentiary exclusionary rules when the trial court considered the amended motion.

Moreover, we note that the amended motion was filed 21 days before the hearing, that Lozada filed a response to the motion, and that Lozada makes no complaint that she was prejudiced by or unprepared to respond to the amended motion. *See* TEX. R. CIV. P. 166a(c). Therefore, we conclude that the trial court did not abuse its discretion by considering the amended motion for summary judgment. Issue Three is overruled.

**HEARING ON OBJECTIONS**

We next address Lozada's fourth issue, which contends that the trial court not only erred by sustaining Farrall & Blackwell's various objections to Lozada's affidavits attached to her response to the motion for summary judgment, but also by failing to allow Lozada the opportunity to respond to the objections. Finding Lozada failed to adequately brief these contentions, we decline to address them.

*Applicable Law*

The Rules of Appellate Procedure require a party's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). When an appellate issue is not supported by argument or lacks citation to the

record or legal authority, nothing is presented for review. *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004); *Nguyen v. Kosnoski*, 93 S.W.3d 186, 188 (Tex. App. – Houston [14th Dist.] 2002, no pet.).

## *Application*

### *A. Opportunity to Object*

Lozada first asserts that the trial court failed to allow her the opportunity to respond to Farrall & Blackwell's objections before ruling on them. However, Lozada has not briefed this argument. Rather, she simply makes one conclusory statement on this matter before proceeding to engage in a discussion of why the trial court erred by sustaining each evidentiary objections for the various reasons asserted by Farrall & Blackwell. Because Lozada fails to present this Court with any argument and authority supporting the contention raised, we find Lozada's complaint inadequately briefed and decline to address it. TEX. R. APP. P. 38.1(h); *Batto v. Gafford*, 119 S.W.3d 346, 350 (Tex. App. – Waco 2003, no pet.) (declining to address issue unsupported by a standard of review or argument).

### *B. The Affidavits*

### *1. Rick's Affidavits*

Lozada next challenges several of the trial court's evidentiary rulings that struck various sentences from Rick's affidavit and supplemental affidavit. First, she complains that the trial court erred by excluding certain sentences pursuant to Rule 703 as either (1) conclusory and unsupported by concrete and particular facts, (2) lacking a proper basis for a reliable expert opinion, or (3) lacking the factual predicate. However, Lozada's only argument in this regard consists of a conclusory sentence that either espouses that Rick's statements are "based either upon what actually transpired or should have transpired, as set forth elsewhere in his affidavit and deposition, or in the depositions

and documents which he reviewed as set forth in his deposition, as well as, based upon his education, training and experience," or that the basis of his statements are "his experience set forth in his affidavit, or in the depositions and documents which he reviewed as set forth in his deposition, as well as, based upon his education, training and experience, as set forth in his deposition, including his CV." Lozada fails to explain what the actual events that transpired were, what information contained in the depositions supported the expert opinion, or which documents support the opinion for each statement stricken by the trial court. Because Lozada engages in no discussion or analysis, and because her one conclusory sentence is insufficient to maintain her burden to adequately brief these complaints, we decline to address them. *See Eaves v. Unifund CCR Partners*, 301 S.W.3d 402, 409 (Tex. App. – El Paso 2009, no pet.) (holding issue inadequately briefed when argument consisted of only three conclusory sentences).

Second, Lozada asserts that the trial court erred by excluding other paragraphs on the basis of relevance under Rules 401 and 402. However, other than citing the general proposition that "to be relevant, the proposed testimony must be 'sufficiently tied to the facts of the case,'" Lozada fails to provide any discussion or argument of the cited principle to the relevant facts of the case. Thus, we find Lozada failed to adequately brief this contention, as well. *See Bradt v. West*, 892 S.W.2d 56, 68-69 (Tex. App. – Houston [1st Dist.] 1994, writ denied) (holding issue inadequately briefed when appellants provided some authority but failed to discuss relevant facts and only made fleeting, conclusory statements).

Third, Lozada contends that the following statements should not have been excluded as confusing under Rule 403: (1) "[w]ith the submission of Part 'B' to Michael Dennis as requested by AIG, the underwriting process commenced;" and (2) the "time involved for underwriting is not relevant to the case." But Lozada cites no authority explaining why, given the facts before the court,

the statements were not confusing, much less does she assert why the statements were admissible. *See Johnson v. Oliver*, 250 S.W.3d 182, 187 (Tex. App. – Dallas 2008, no pet.) (issue inadequately briefed when party presented no authority to support their contention or argument). As such, this contention is also inadequately briefed.

### 2. Lozada's Affidavit

Lozada next complains that the trial court erred by sustaining several objections to various statements in her affidavit. According to Lozada, any statements she made reciting what Michael Dennis said were admissible as statements by a party opponent or as statements against interests, and that the statements she made reciting what Jose Lozada uttered were admissible as Jose was unavailable because of death. She also attacks the trial court's exclusion of various other statements in her affidavit, contending that Farrall & Blackwell's expert objection to certain statements in her affidavit was "non-sensical," that her objected-to opinion statements "fall squarely within the letter and spirit of [Rule] 701," that another statement, which was truthful, was not prejudicial under Rule 403, that she had personal knowledge of another excluded statement, and that her remaining objected-to statements were not conclusory.

However, each complaint merely consists of one or two conclusory sentences with a general reference to an evidentiary rule or case. Again, Lozada engages in no legal analysis, discussion, or argument, that is, she does not analyze the rules or cases cited, or attempt to apply them to the facts at issue. Accordingly, we hold Lozada failed to adequately brief these contentions. *See* Tex. R. App. P. 38.1(i); *Dolenz, Life Estate v. Dallas Cent. Appraisal Dist.*, 293 S.W.3d 920, 923 (Tex. App. – Dallas 2009, pet. denied) (holding issue inadequately briefed where appellant's brief consisted of "one sentence of law" but did not include any discussion of the law cited to the relevant facts of the case); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337-38 (Tex. App. – Houston [14th

Dist.] 2005, no pet.) (holding issue inadequately briefed when parties failed to make any specific argument or engage in any analysis showing how the record and the law supports their contentions).

### 3. *Affidavits of Virginia Lozada and Fernando Mejorado*

Lozada also raises various challenges to the trial court's exclusion of certain sentences from the affidavits of Virginia Lozada and Fernando Mejorado. Similar to the arguments made in response to the objections made to her affidavit, Lozada asserts that any statements made by them reciting Dennis' utterances were admissible as statements by a party opponent or as statements against interests. But again, other than making a general cite to the evidentiary rules and some cases, Lozada simply concludes in one sentence that the statements were admissible. Having failed to engage in any legal analysis, discussion, or argument explaining why the complained-of statements met the exception to the hearsay rule, we hold Lozada failed to adequately brief these contentions.[3] *See* TEX. R. APP. P. 38.1(i); *Dolenz*, 293 S.W.3d at 923; *San Saba Energy,* 171 S.W.3d at 337-38. Issue Four is overruled.

### SUMMARY JUDGMENT

We now turn to Lozada's first issue, which contests the summary judgment entered in favor of Farrall & Blackwell, and the trial court's denial of Lozada's motion for new trial. Specifically, Lozada contests the applicability of the limitations bar to her claims for negligence, negligent misrepresentation, and violations of the DTPA and Insurance Code, and challenges the trial court's implicit determination that she failed to prove her claims for fraud and promissory estoppel.

### *Standard of Review*

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656,

---

[3] In addition, Lozada asserts that the trial court erred by striking paragraphs 9 and 10 of Virginia's affidavit as irrelevant under Rule 402. However, the record reflects that the trial court overruled Farrell & Blackwell's objections to those paragraphs. Consequently, Lozada's complaint is misplaced.

661 (Tex. 2005). Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a summary judgment, we indulge every reasonable inference in favor of the nonmovant, take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

*Statute of Limitations*

We first address Farrall & Blackwell's contention that Lozada's causes of action for negligence, negligent misrepresentation, and violations of the DTPA and Insurance Code are barred by limitations. When a defendant moves for summary judgment on the affirmative defense of limitations, it has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison County Housing Finance Corporation*, 988 S.W.2d 746, 748 (Tex. 1999). "The defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pled or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury." *Walker v. Presidium, Inc.*, 296 S.W.3d 687, 694 (Tex. App. – El Paso 2009, no pet.) (citing *KPMG Peat Marwick*, 988 S.W.2d at 748). Once the defendant establishes limitations as a bar to the action, the plaintiff must then adduce summary judgment proof raising a fact issue to avoid the statute of limitations. *Id*.

By statute, there is a two-year limitations period for violations of the DTPA and Insurance Code, and for suits for negligence and negligent misrepresentation. *See* TEX. BUS. & COM. CODE ANN. § 17.565 (Vernon 2002); TEX. INS. CODE ANN. § 541.162 (Vernon 2009); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (Vernon Supp. 2009). Generally, that limitations period begins to run when a particular cause of action accrues, that is, "when a wrongful act causes a legal injury

regardless of when the plaintiff discovers the injury or if all resulting damages have not yet occurred." *Walker*, 296 S.W.3d at 694 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998)). However, when insurance benefits are the issue in such causes of action, the statute of limitations begins running on the day the insurance claim is denied. *See Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003) (DTPA); *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994) (Insurance Code); *Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 514 (Tex. 1998) (negligence); *Walker*, 296 S.W.3d at 691, 694-95 (negligent misrepresentation).

Here, Lozada received a letter in April 2004, that revealed her claim for benefits was denied. Specifically, the letter stated that based on the "Not Taken" letter issued in December, no policy was in force and no benefits are payable. At that point, the two-year statute of limitations began running for any violations of the DTPA and Insurance Code, and for any claims of negligence and negligent misrepresentation. *See Knott*, 128 S.W.3d at 221; *Coats*, 885 S.W.2d at 100; *Johnson & Higgins*, 962 S.W.2d at 514; *Walker*, 296 S.W.3d at 691, 694-95. Thus, Lozada's suit for such claims filed on July 20, 2006, is barred by the statute of limitations.

Nevertheless, Lozada contends that the denial letter dated April 1, 2004, was insufficient to trigger the statute of limitations as the letter does not reveal that the decision to deny benefits was based upon the facts as they existed on February 28, 2004, namely, that Jose Lozada was in the process of reapplying for benefits and had signed a Short Health Statement, "PAC" form, and Acknowledgment of Delivery of Policy. However, nothing in the letter suggests that AIG did not take into consideration the facts as existed on February 28, 2004. Indeed, the letter was actually sent in response to a benefits claims made on March 17, 2004. And the evidence established that simply signing those documents was not sufficient to provide binding coverage as AIG needed a new Part

B "to consider reopening and redating." Moreover, a claim-denial letter need not address such issues. Rather, it simply must convey the insurer's determination of the insurance claim and the reason for the decision. *Knott*, 128 S.W.3d at 222-23. The letter did so in this case – it conveyed AIG's determination regarding the claim ("there will be no claim benefits payable") and the reason for the decision ("the policy is not in force"). And even if AIG issued a second letter specifically setting out the specific facts as they existed on February 28, 2004, settled law dictates that the first denial letter still triggered the statute of limitations. *See Coats*, 885 S.W.2d at 100; *Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632, 635 (Tex. App. – Houston [14th Dist.] 2005, no pet.).

Relying on the discovery rule, Lozada further asserts that the statute of limitations did not begin running until August 9, 2004, when she and her daughter spoke to Dennis about what happened with the second application for benefits. According to Lozada, she lacked "enough information to make a determination on who had, or had not, done what, in connection with the issue of life insurance coverage for [her] husband" until she spoke to Dennis and received certain information. Although the discovery rule tolls the limitations period until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury caused by the wrongful act of another, *Childs*, 974 S.W.2d at 40, the discovery rule "does not linger until a claimant learns of actual causes and possible cures." *PPG Industries, Inc. v. JMB/Houston Centers Partners*, 146 S.W.3d 79, 93 (Tex. 2004). Rather, the limitations clock is ticking from the day the insurance company denies coverage. *Knott*, 128 S.W.3d at 222; *Johnson & Higgins*, 962 S.W.2d at 515. Therefore, it makes no difference that Lozada did not yet know the specific cause of the injury, the party responsible for it, the full extent of the harm, or the chances of avoiding it. *PPG Industries*, 146 S.W.3d at 93-94. Lozada should have brought her suit within two years from the day AIG denied benefits.

Finally, we reject Lozada's claim that limitations was tolled by fraudulent concealment. Fraudulent concealment defers an action's accrual period until the plaintiff discovers or should have discovered the deceitful conduct or facts giving rise to the cause of action. *Earle v. Ratliff*, 998 S.W.2d 882, 888-89 (Tex. 1999). It "requires evidence that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Id*. at 888. A showing that the defendant was merely negligent in what it did is not sufficient to establish the affirmative defense. *Id*. at 889.

Here, there is no evidence that Farrall & Blackwell knew which documents to submit for insurance coverage and then purposely provided wrong documents for Jose to sign. Rather, they contacted MFS to inquire into what documents should be provided. This is not evidence that Farrall & Blackwell fraudulently concealed any facts giving rise to Lozada's cause of action. Accordingly, we find that the trial court did not err by granting summary judgment on Farrall & Blackwell's limitations defense for negligence, negligent misrepresentation, and violations of the DTPA and Insurance Code.

*Fraud*

Lozada also challenges the trial court's implicit determination that she failed to prove her cause of action for fraud. In this regard, Lozada makes two arguments: (1) that Farrall & Blackwell told Jose, through Dennis, that the Short Health Statement, PAC form, and Delivery of Policy were the documents that would effectuate coverage; and (2) that Farrall & Blackwell did not know what was needed to obtain the desired coverage and simply "guessed at what the answer might be." We disagree.

Statements are not fraudulent unless the speaker knew they were false when made or that they were made recklessly without knowledge of the truth. *Prudential Ins. Co. v. Jefferson Assocs*., 896

S.W.2d 156, 163 (Tex. 1995). Whether statements were made knowing of their falsity or without knowledge of their truth may be proved by direct or circumstantial evidence. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986).

Here, there is no evidence that anyone ever told Jose Lozada that the subject documents would effectuate coverage. The depositions revealed that Farrall & Blackwell never spoke directly to the Lozadas, that Farrall & Blackwell never told Dennis to tell the Lozadas that the documents would guarantee coverage, and that Dennis knew the documents did not effectuate coverage and conveyed this understanding to the Lozadas. Moreover, even after the documents were signed, deposition testimony revealed that a new underwriting process would be required before approval as there was more than a three-month break since the policy was first offered to Jose. Although Lozada relies on statements contained in her affidavit and the affidavits of her daughter and Mejorado that Dennis told them that the documents effectuated coverage, the trial court struck those statements as hearsay. Accordingly, absent any evidence that Farrall & Blackwell told Jose, through Dennis, that the Short Health Statement, PAC form, and Delivery of Policy were the documents that would effectuate coverage, Lozada's first fraudulent complaint fails.

Furthermore, we have been unable to find any evidence that Farrall & Blackwell knowingly and recklessly gave any wrong documents to Jose Lozada to sign. Rather, the deposition testimony shows that Farrall & Blackwell contacted MFS, who then contacted AIG, to find out which documents to provide. Farrall & Blackwell then provided only those documents that MFS told it to provide. In other words, Farrall & Blackwell only gave Jose Lozada documents after making an investigation and obtaining sufficient information or basis to suggest that the documents provided were correct. *See Johnson & Higgins*, 962 S.W.2d at 527 (finding no fraud where defendant made investigation before making representation, even if the representation was incorrect). Thus, Lozada's

second fraudulent complaint fails, and the trial court did not err by granting summary judgment in favor of Farrall & Blackwell on Lozada's fraud claim.

*Promissory Estoppel*

Lozada next challenges the trial court's implicit determination that she failed to prove the elements of promissory estoppel. The elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378-79 (Tex. App. – Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Here, we find no evidence that a promise was made and thus do not address the other elements. *See Boy Scouts of America v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 743 (Tex. App. – Dallas 1990, writ denied).

A promise is a declaration that binds the person who makes it to act or refrain from acting in a particular way. *Traco Inc. v. Arrow Glass Co.*, 814 S.W.2d 186, 190 (Tex. App. – San Antonio 1991, writ denied). Here, Lozada contends that Farrall & Blackwell's actions in providing paperwork to Dennis for Jose to sign for purposes of submitting the policy application to AIG for underwriting was sufficient to create a promise, that is, that Jose would be granted coverage once he signed the documents. But again, other than statements made in Lozada's affidavits, which were excluded by the trial court, there is no evidence that Farrall & Blackwell ever spoke directly to the Lozadas, that Farrall & Blackwell ever told Dennis to tell the Lozadas that the documents would guarantee coverage, or that Dennis knew the documents effectuated coverage and conveyed that understanding to the Lozadas. Finding no promise that merely signing the documents created any binding coverage, the trial court did not err by granting summary judgment in favor of Farrall &

Blackwell on Lozada's claim for promissory estoppel.[4]

*Damages*

Finally, Lozada asserts that she is entitled to damages based on her causes of actions asserted. However, because we have found that the trial court correctly granted Farrall & Blackwell's amended motion for summary judgment on the actions alleged, Lozada is not entitled to damages. Issue One is overruled.

**LAW OF AGENCY**

Lozada's remaining issue, that is, her second issue, contests the trial court's implicit determination that Dennis was not Farrall & Blackwell's agent. In this regard, Lozada argues that Dennis had actual or apparent authority to bind Farrall & Blackwell, and that Farrall & Blackwell ratified his conduct. We disagree.

*Applicable Law*

The existence of an agency relationship may be based on actual or apparent authority. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 550 (Tex. App. – Houston [14th Dist.] 2003, no pet.). Actual authority, which includes both express and implied authority, generally denotes authority that a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe that he possesses, or (3) allows the agent to believe that he possesses by want of due care the authority to act on behalf of the principal. *Suarez v. Jordan*, 35 S.W.3d 268, 273 (Tex. App. – Houston [14th Dist.] 2000, no pet.). Express authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474 (Tex. App. – Dallas 2007, pet. denied).

---

[4] We note that the depositions revealed that once the documents were received, it would take at least ten days to make it through underwriting and issue a policy, if approved. Jose signed the documents on February 28, 2004, and died on March 5, 2004.

Implied authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers. *Nears v. Holiday Hospitality Franchising, Inc.*, 295 S.W.3d 787, 795 (Tex. App. – Texarkana 2009, no pet. h.). If an agent does not have express authority, he does not have implied authority. *Crooks*, 238 S.W.3d at 483.

"Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority." *Ins. Co. of North America v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). "One seeking to charge a principal through the apparent authority of its agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that it purports to exercise." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). "The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily permitted the agent to act in an unauthorized manner." *Id*. Only the conduct of the principal is relevant to determining whether apparent authority exists. *Id.* at 952-53.

Moreover, even if the alleged agent is not initially authorized to act on behalf of a principal, that agent's actions may be attributed to the principal if the principal later ratifies the agent's conduct. *Walker Ins. Servs.*, 108 S.W.3d at 552. Thus, ratification occurs when a principal supports, accepts, or follows through on the efforts of a purported agent. *Id*. As noted by our sister court of appeals, "Ratification is the affirmance by a person of a prior act which when performed did not bind him, but which was professedly done on his account, whereby the act is given effect as if originally authorized by him." *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 31 (Tex. App. – San Antonio 1998, pet. dism'd w.o.j.).

*Application*

Lozada relies on the fact that Farrall & Blackwell gave Dennis paperwork for Jose Lozada

to sign to support a finding of actual and apparent authority, and ratification. However, in *Gaines*, the Supreme Court found that a mortgage broker's authority to deliver documents and facilitate the processing of the loan on the lender's behalf did not include the authority to negotiate terms and commit the lender. *Gaines v. Kelly*, 235 S.W.3d 179, 182-84 (Tex. 2007); *see also Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 915-17 (Tex. App. – Dallas 2008, no pet.) (finding general contractor was not homeowner's agent despite signing a contract with Total Heat & Air to perform work on the house). Similarly, here, we believe, given the evidence before us, that Dennis' action of simply delivering paperwork or assisting in their completion does not equate to a finding that Dennis was Farrall & Blackwell's agent, much less for binding purposes.

Moreover, the record does not contain any evidence that Dennis was an agent of Farrall & Blackwell. In his deposition, Dennis expressly denied that he was an agent for Farrall & Blackwell. Similarly, Farrall & Blackwell denied that Dennis was their agent. Even Lozada's own expert denied that Dennis was acting as Farrall & Blackwell's agent. Rather, Dennis solely represented that he was an agent of AIG. And even as AIG's representative, Dennis denied that he had any binding authority, that is, to issue the policy or put it in place. Accordingly, Issue Two is overruled.

## CONCLUSION

Having overruled Lozada's issues, we affirm the trial court's judgment.

GUADALUPE RIVERA, Justice

August 25, 2010

Before Chew, C.J., McClure, and Rivera, JJ.