COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 BUSINESS STAFFING, INC., HARRY SEWILL, BSI
 INSURANCE SERVICES, INC., BART BOGUS, TRASNGLOBAL MORTGAGE, INC., TRANSGLOBAL
 INDEMNITY LIMITED, LHR ENTERPRISES, INC., AND RICHARD GABLE CHAPMAN,
  
                            
 Appellants,
  
 v.
  
 JACKSON HOT OIL SERVICE, D/B/A, JACKSON
 BROTHERS HOT OIL SERVICE, DELBERT JACKSON, TERRY JACKSON, AND CODY JACKSON,
  
                             Appellee.
 
 
   §
     
   §
     
   §
     
   §
     
   §
     
  §
  
 §
  
 §
  
 §
  
 §
  
 
 
  
  
  
  
 No.
 08-11-00092-CV
  
 Appeal from the
  
 109th
 Judicial District Court 
  
 of
 Andrews County, Texas 
  
 (TC# 17,301) 
  
 
 


 

O
P I N I O N

The opinion and judgment dated May 23, 2012,
are hereby withdrawn and the following opinion and judgment are substituted in
their place.

Appellants Business Staffing, Inc. (“BSI”),
its directors and several related entities[1]
(collectively “Defendants”) appeal a final judgment in favor of Jackson Hot Oil
Service d/b/a Jackson Brothers Hot Oil Service (“Jackson Brothers”), brothers
Delbert and Terry Jackson (“the Jacksons”), and Cody Jackson,[2]
Terry’s son and Delbert’s nephew (collectively “Appellees”).  Appellants bring eleven issues:  (1) error in the trial court’s denial of
Appellants’ motion for judgment notwithstanding the verdict based on
affirmative defenses; (2) legal and factual insufficiency of the evidence to
support the jury award of Deceptive Trade Practices Act damages as to Appellee
Cody Jackson; (3) legal and factual insufficiency of the evidence to support a finding
that Appellants committed fraud as to Appellee Cody Jackson; (4) legal and
factual insufficiency of the evidence to support the award of actual damages as
to Appellee Cody Jackson; (5) legal and factual insufficiency of the evidence
to support the award of exemplary damages as to Appellee Cody Jackson; (6)
legal and factual insufficiency of the evidence to support the jury finding of
fraud by BSI against Appellee Jackson Brothers; (7) legal and factual
insufficiency of the evidence to support the jury award for actual damages as
to Appellee Jackson Brothers; (8) legal and factual insufficiency of the
evidence finding that breach of contract by Appellee Jackson Brothers was
excused; (9) error by the court in failing to construe a 1999 contract because
it was unambiguous; (10) error in granting Appellees’ motion to introduce parol
evidence; and (11) error in entering final judgment when Appellees failed to
properly elect remedies.  For the reasons
that follow, we reform the final judgment in part and affirm the judgment of
the trial court, as modified.

PROCEDURAL
BACKGROUND

Appellees filed
suit against Appellants in the District Court of Andrews County, alleging breach
of contract, violations of the Texas Deceptive Trade Practices Act (“DTPA”),
breach of the duty of good faith and fair dealing, and negligence.  Subsequent pleadings added claims for, inter alia, fraud, and violations of the
Texas Insurance Code, as well as adding additional Defendants.  A jury trial was conducted from August 23,
2010 through August 31, 2010.  Following
the trial, the jury entered a multi-million dollar verdict against Appellants
based on its findings that all Appellants had engaged in unconscionable and
deceptive acts and committed fraud which harmed Appellee Cody Jackson.  The jury found that only Appellant BSI
committed fraud against Jackson Brothers. 
The jury awarded Cody Jackson and Jackson Brothers actual and punitive
damages, and awarded BSI $112,000 for its breach of contract claim against
Jackson Brothers.  The trial court
rendered judgment on the verdict, and Appellants timely appeal.

FACTUAL
BACKGROUND

Appellant Transglobal Indemnity
(“Transglobal”) is an entity created in the 1990s by Appellants Harry Sewill
(“Sewill”) and Richard Chapman (“Chapman”),[3] as the
insurance company that would provide workers’ compensation for Appellant BSI, a
staff leasing business,[4] in
order to go into the insurance business and hold onto the money which would
normally have been paid for premiums.  Neither
Sewill, Chapman, BSI, or Transglobal is licensed to conduct insurance business
in the State of Texas.  Transglobal was
set up to be headquartered in Turks and Caicos in the Caribbean, but it
maintains no office or employees there.[5]  Transglobal issued a single insurance policy
to one insured, BSI, with an annual premium of $4,100 for coverage of up to
$1,000,000 per accident to cover all of BSI’s 150 client companies’ 2000 leased
employees.

Appellant Transglobal Mortgage is a Texas
corporation, run by Chapman and Sewill, whose function is to act as a
“lock-box” to receive money that the other Defendants charge client companies, it
is a subsidiary of Transglobal and has no employees of its own.  BSI Insurance Services, Inc. and Bart Bogus
(“Bogus”) issued certificates of insurance to BSI’s customers, representing
that the customers had workers’ compensation insurance coverage, though Bogus
was not the insurance agent and did not procure or sell the purported
Transglobal insurance.  LHR is a holding
company, one-third each owned by Chapman and Sewill, which is the holding
company of Transglobal.

During the mid-1990s, BSI, by and through its
employees, represented to Appellees Delbert and Terry Jackson that BSI would
provide them workers’ compensation insurance for Jackson Brothers, advised them
that BSI would set up Jackson Brothers on the minimum payroll amount possible
to get the insurance, and expressly advised the Jacksons to pay themselves, and
later Cody Jackson, bonuses.  BSI’s
employees represented to the Jacksons, who relied upon the representations, that
BSI would acquire the necessary workers’ compensation and handle both
administrative and risk management tasks for Jackson Brothers under those terms.  The Jacksons signed contracts drafted by BSI to
provide staff leasing services.

In July 1999, Jackson Brothers and BSI entered
into a written contract wherein BSI agreed to lease employees to Jackson
Brothers (the “1999 Contract”).  The 1999
contract provided that BSI, in addition to providing a number of other
administrative services,[6] would
be responsible for acquiring “workers’ compensation insurance coverage and/or
benefits,” with such coverage only being available to BSI’s employees and only
for the period compensated by BSI.  One
of the clauses of the 1999 Contract was a default provision which provided that
if Jackson Brothers made payments directly to one of its leased employees such
an act would constitute a default resulting in the termination of the
employment relationship between the leased employee and BSI.  After BSI and Jackson Brothers entered into
the 1999 Contract, BSI exercised its right under the contract to either provide
benefits, which it did in 2000 and 2001, or to procure workers’ compensation
insurance through an admitted insurance carrier, which it did in 2002 through
Defendant Transglobal Indemnity.

Cody Jackson began working for Jackson
Brothers in 1997, driving and operating a hot oil truck, as a leased employee
of BSI.  An employment contract, under
the same terms the Jacksons executed for their own individual employment contracts
with BSI, was entered into advising Cody Jackson that he would be provided with
workers’ compensation benefits for injuries compensable under the Texas Workers’
Compensation Act.

On March 2, 2005, Cody Jackson was burned in
an on-the-job accident while performing contract work for Great Western
Drilling Co. (“Great Western”).[7]  Part of an oil field fire caused the hot oil
truck Cody Jackson was driving to catch fire, and he suffered deep second- and
third-degree burns on 65-70 percent of his body, incurring $1,016,000 in
medical costs for treatment by Texas Tech University Health Sciences Center
(“TTUHSC”) and the University Medical Center Hospital (“UMCH”) burn unit.  Following eighteen or more surgeries and
seventy-seven days of intensive burn unit care, Cody Jackson was released to
rehabilitation therapy and home treatment, incurring additional medical
expenses.  Appellants paid approximately
$13,000 of incidental medical bills until December 6, 2006, but as of that date
had neither paid nor denied any of the $1,016,000 owed to TTUHSC and UMCH.  A BSI employee, Jessica Reid, had Jackson
Brothers provide information on a “Texas Workers’ Compensation Commission
Employer’s First Report of Injury” form for Cody Jackson as an employee of BSI.  Appellants paid a weekly temporary benefit to
Cody Jackson for eighteen months after the accident.  Counsel for Cody Jackson made demand on
Chapman and BSI on December 5, 2005 to have their workers’ compensation carrier
pay the TTUHSC bills and some of the UMCH bills.  However Chapman, BSI, and Transglobal
Indemnity never responded to this demand.  Subsequently, Appellees commenced their
various lawsuits against the Appellants.

R. Glen Miller (“Miller”) is an employee of
Transglobal, acting as “domestic operations officer” and handled claims for
BSI’s employees.  Miller explained that
Transglobal Indemnity did not promptly pay the TTUHSC and UMCH bills because
they were too high and needed to be audited. 
An audit was completed on July 25, 2005, with a conclusion that a lesser
amount be paid, however the claims at the audited amounts were not acted on for
another year, and were not paid.  Later,
the claims were denied based on Miller determining that Cody Jackson was a
“statutory employee” of Great Western at the time of the accident.  However, at trial, an employee of Great
Western, Larry Leavelle, testified that Cody Jackson was called to work as a
contractor with Jackson Brothers and was not an employee of Great Western.  Miller also denied the claims on the basis that
he received a message from Great Western’s insurance carrier asserting that
Cody Jackson had made a claim as their employee, however this was a claim
initiated by Chapman in 2008, following a deposition he gave in the underlying
case.  Chapman made this claim without
Cody Jackson’s authorization or Jackson Brothers’ knowledge.  Chapman testified that the benefit payments
and payments for medical expenses ceased because BSI discovered that Cody
Jackson ceased being an employee of BSI prior to the accident because Jackson
Brothers breached the 1999 Contract by making direct bonus payments to Cody
Jackson.

While Transglobal supposedly set a reserve
for Cody Jackson’s claim in the amount of $1,300,000, Miller could not testify
that there was ever, in fact, $1,000,000 in the account.  Miller testified that Transglobal was not an
insurance company capable of paying the claim.

There is no document which indicates that BSI
advised the Jacksons, Cody Jackson, or Jackson Brothers that they did not have workers’
compensation insurance coverage.

Following a jury trial, the jury found that
all Appellants had engaged in unconscionable and deceptive acts and committed
fraud which harmed Appellee Cody Jackson. 
Appellants filed several post-trial motions, including a motion for
judgment notwithstanding the verdict (“JNOV”), objecting to the form and
contents of the proposed final judgment for failing to take account of
settlement credits and failing to properly elect remedies, as well as a motion
for a new trial.  The final judgment contained
minor changes made but was in substantial conformity with the one proposed by
Appellees.  Ultimately, the motion for
new trial was overruled by operation of law.

DISCUSSION

Appellants raise eleven issues.

I.                  
Denial
of Motion for Judgment Notwithstanding the Verdict

Appellant’s first issue alleges that the
trial court erred by denying Appellants’ JNOV based on the affirmative defense
of statute of limitations and other defenses.

We review the
denial of a JNOV under a legal sufficiency standard.  Nottingham Manor Owners Ass’n
v. El Paso Elec. Co.,
260 S.W.3d 186, 192 (Tex.App.--El Paso 2008, no pet.), citing Richard Rosen, Inc. v.
Mendivil, 225 S.W.3d 181, 191 (Tex.App.--El Paso 2005, pet. denied).
 In a legal sufficiency review, the court
of appeals cannot substitute its judgment for that of the trier-of-fact, so
long as the evidence falls within the zone of reasonable disagreement.  City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  “If the evidence at trial would enable
reasonable and fair-minded people to differ in their conclusions, then jurors
must be allowed to do so.”  Id.  We will sustain the legal-sufficiency
challenge if the record reveals:  (1) the
complete absence of evidence supporting the finding; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
support the finding; (3) the evidence offered to prove the finding is no more
than a mere scintilla; or (4) the evidence conclusively establishes the
opposite of the finding.  Id. at 810–11.  More than a scintilla of evidence exists when
the evidence presented rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004).  See
also Frontera Sanitation, L.L.C. v.
Cervantes, 342 S.W.3d 135, 139 (Tex.App.--El Paso 2011, no pet.)(same).  The reviewing court must consider evidence in
the light most favorable to the verdict, and indulge every reasonable inference
that would support it.  Keller, 168 S.W. 3d at 822.

When the basis for a JNOV is
the statute of limitations, the party asserting the affirmative defense of
limitations has the burden to show from the record that suit is barred by
limitations, and if pleaded by the plaintiff, show that the discovery rule does
not apply.  Barber v. Crowson, 2000 WL 1367968, *3 (Tex.App.--El Paso Sept. 21,
2000, no pet.), citing Schindley v.
Northeast Texas Community College, 13 S.W.3d 62, 65 (Tex.App.--Texarkana 2000,
pet. denied).  A cause of action
generally accrues at the time when facts come into existence authorizing a
claimant to seek a judicial remedy.  Murray v. San Jacinto Agency, Inc., 800
S.W.2d 826, 828 (Tex. 1990).  In Texas, a
plaintiff's cause of action accrues, and the applicable limitations period
starts to run, “when a wrongful act causes some legal injury, even if the fact
of injury is not discovered until later, and even if all resulting damages have
not yet occurred.”  S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996).  See
also Doe v. Catholic Diocese of El Paso, 2011 WL 4376591, *6 (Tex.App.--El
Paso Sept. 21, 2011, no pet.)(same).  As
this Court has held, when insurance benefits are at issue in DTPA and Texas
Insurance Code actions, the statute of limitations begins to run on the day the
claim is denied.[8]  Lozada
v. Farrall & Blackwell Agency, Inc., 323 S.W.3d 278, 288 (Tex.App.--El
Paso 2010, no pet.).

Appellants argue that the
relationship between the parties is governed by the terms of the 1999 Contract
and Appellees’ cause of action accrued in 2002, when BSI “left the certified
insurance market and obtained insurance from Transglobal Indemnity, Ltd.”  Appellants claim Appellees have disguised
their true cause of action, a breach of contract, through “artful pleading” by
claiming the cause of action was for fraud and DTPA violations.[9]  According to Appellants, if there was a cause
of action against any Appellant based on BSI’s decision to become a
nonsubscriber, it was a breach of contract cause of action that accrued in
2002, and therefore the statute of limitations had expired.  Appellants argue they have proven the defense
of statute of limitations through their motions and the evidence adduced at
trial.  Appellees assert that BSI failed
to disclose that Cody Jackson did not have the benefit of insurance coverage
for compensable injuries under the Texas Workers’ Compensation Act until they
discovered that fact in May of 2006, through due diligence.  Appellees further assert that the Appellants
fraudulently concealed that no coverage existed.[10]

A review of the record
indicates that the causes of action accrued in 2006 or later.  For example, Appellants paid a weekly temporary benefit to Cody Jackson for eighteen
months after the accident.  Transglobal
performed an audit of the invoices, which was completed on July 25, 2005.  The conclusion was that a lesser amount should
be paid to the medical providers.  However
the claims at the audited amounts were not denied for another year, and were
not paid.  In 2006, Transglobal advised
the medical providers that Starr Comprehensive Solutions had been asked to
perform case management duties to assist Cody Jackson’s vocational and medical
case management needs.  The record also
reflects that the Jacksons had not filed a workers’ compensation claim until
Cody Jackson’s accident.  Delbert Jackson
testified that he learned that there was no workers’ compensation coverage in
the summer of 2006.  The record reflects
that the claims for medical expenses had not been denied as of August of 2006.

Other evidence in the record reflects that
the causes of action may have accrued even later.  Chapman was deposed on January 15, 2008.  At that deposition, Chapman testified that
there was no document in existence by which BSI ever informed Jackson brothers
that they had no workers’ compensation insurance.  Following that deposition, Chapman made a
claim in Cody Jackson’s name, but without his knowledge, against Great Western.

The jury charge asked the jury to determine a
date by which “all” the false acts would have been discovered:

By what date should Cody Jackson, in the
exercise of reasonable diligence, have discovered all the false, misleading,
unfair or deceptive acts or practices of BSI, and/or BSI Insurance, and/or
Harry Sewill, and/or Richard Chapman, and/or Bart Bogus, and/or Transglobal
Mortgage, and/or Transglobal Indemnity, and/or LHR Enterprises.

 

Answer:
Jan. 2008

 

Based on the forgoing and Chapman’s
deposition testimony as well as the claim made subsequent to his deposition,
the jury could reasonably have found that the date of discovery was January of
2008.

Appellees filed their first petition on March
2, 2007.  Considering the evidence in the
light most favorable to the verdict, we find that Appellees’ causes of action
were not barred by the statute of limitations.  Under a plain reading of the Lozada case, the DTPA and Texas
Insurance Code causes of action would not accrue until the claims were denied,
which, as the record reflects, did not occur until at least August of
2006.  The DTPA statute of limitations
depends on the discovery of the deceptive act and again, the record indicates
that the discovery of this would have occurred in 2006, if not later.  As the petition was filed within one year of
August of 2006, the operable statutes of limitations would not serve to bar
Appellees’ causes of action.  Appellant’s
first issue is overruled.

II.               
Legal
and Factual Insufficiency of the Evidence

Issues two through
eight allege legal and factual insufficiency of the evidence as it relates to
nearly all of the jury’s answers in the charge.  Appellants roughly group these issues into
errors relating to Cody Jackson, Jackson Brothers, and the 1999 Contract.  Appellants assert that the evidence was legally
and factually insufficient to support the jury award of DTPA damages as to
Appellee Cody Jackson (Questions One, Two, Five, and Ten); insufficient to
support the finding that Appellants committed fraud as to Appellee Cody Jackson
(same); insufficient to support an award for actual damages as to Appellee Cody
Jackson (Question Six); insufficient to support an award for exemplary damages
as to Appellee Cody Jackson (Questions Seven, Fourteen, and Sixteen);
insufficient to support the jury finding of fraud by BSI against Appellee
Jackson Brothers (Questions Three, Eight, and Thirteen); insufficient to
support the jury award for actual damages as to Appellee Jackson Brothers; and insufficient
evidence finding that the breach of contract by Appellee Jackson Brothers was
excused.

Standard of Review

When considering
the legal sufficiency of the evidence supporting a finding, we must credit
evidence favorable to the judgment if a reasonable fact finder could, disregard
contrary evidence unless a reasonable fact finder could not, and reverse the
fact finder’s determination only if the evidence presented in the trial court
would not enable a reasonable and fair-minded fact finder to reach the judgment
under review.  City of Keller, 168 S.W.3d at 827.  We sustain legal-sufficiency challenges if the
record reveals:  (1) the complete absence
of evidence of a vital fact; (2) that the court is barred by rules of law or
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) that the evidence offered to prove a vital fact is no more than a scintilla;
or (4) that the evidence conclusively establishes the opposite of a vital fact.
 Id.
at 810.  More than a scintilla of
evidence exists if the evidence rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions.  Ford
Motor Co., 135 S.W.3d at 601.

When reviewing a
challenge to the factual sufficiency of the evidence, we consider all the
evidence and set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence that it is clearly wrong and unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
Under either standard, we are mindful that the jury, as the finder of
fact, is the sole judge of the credibility of the witnesses and the weight to
be given their testimony.  McGalliard v. Kuhlmann, 722 S.W.2d 694,
696 (Tex. 1986).  The jury may choose to
believe one witness and disbelieve another, and we must not impose our own
opinion to the contrary.  City of Keller, 168 S.W.3d at 819.  See
also City of El Paso v. Parsons, 353 S.W.3d 215, 225 (Tex.App.--El Paso 2011,
no pet.)(noting same).  If sufficient
competent evidence of probative force exists to support the finding, it must be
sustained.  In re B.R., 950 S.W.2d 113, 121 (Tex.App.--El Paso 1997, no pet.).  Where conflicting evidence is present, the
fact finder’s determination on such matters is generally regarded as
conclusive.  Cass v. Stephens, 156 S.W.3d 38, 56 (Tex.App.--El Paso 2004, pet.
denied).

Error relating to Cody Jackson

Appellants first
challenge the sufficiency of the DTPA award to Cody Jackson.  Question One asked the jury to determine
whether Appellants engaged in any unconscionable action or course of action
that was a producing cause of damages to Cody Jackson.  The definitions of “unconscionable” and
“consumer” used in Question One of the charge were taken from the DTPA
definitions in Tex.Bus.&Com.Code Ann.
§ 17.45(4) and (5).[11]  The jury answered “yes” as to all
Appellants.  Question Two asked whether
Appellants had engaged in any false, misleading, unfair, or deceptive act or
practice that was a producing cause of damages to Cody Jackson.  Question Five asked the jury to determine
what date Cody Jackson should have discovered “all” of the deceptive acts or practices through reasonable
diligence.  Question Ten asked whether
Appellants acted “knowingly” or “intentionally,” which the jury answered “yes”
as to most Appellants, save BSI Insurance, Transglobal Mortgage, and LHR
Enterprises.

Appellants argue there
was a complete lack of evidence that Appellants ever dealt directly with Cody
Jackson or made any representation to anyone with the intent that the
representation be made to Cody Jackson, and that he is not a “consumer” under
the DTPA.  However, this assertion is not
supported.  In Kennedy v. Sale, 689 S.W.2d 890 (Tex. 1985), the Texas Supreme
Court held that an employee can qualify as a “consumer” under the DTPA.  Specifically, in Kennedy, the Supreme Court held that an employee had standing as a
“consumer” under the DTPA to sue an insurance agent who sold an insurance
policy to the plaintiff’s employer.  The Kennedy court noted that “[p]rivity
between the plaintiff and defendant is not a consideration in deciding the
plaintiff’s status as a consumer under the DTPA . . . .”  Kennedy,
689 S.W.2d at 892-93, citing Flenniken v.
Longview Bank & Trust Co., 661 S.W.2d 705, 707 (Tex. 1983).  The Supreme Court noted that construing the
DTPA in a limited fashion, “only direct purchasers can be consumers,” is in
contravention to the DTPA’s mandate of liberal construction.  Id.
at 892.  Under the Kennedy rationale, Cody Jackson may reasonably have “acquired”
benefits when he was covered by the provisions of the workers’ compensation
policy, and the Jacksons and Jackson Brothers could reasonably be said to have
“acquired” the compensation policy benefits “by purchase,” with the intent that
those benefits be used by the employees of Jackson Brothers, including Cody
Jackson.  Id.  The result of this would
confer DTPA status as a “consumer” on Cody Jackson and therefore Appellants’
legal sufficiency argument regarding this point is without merit.  We now turn to Appellants’ factual sufficiency
challenge.

“The DTPA grants
consumers a cause of action for false, misleading, or deceptive acts or
practices.”  Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 649 (Tex. 1996); see Tex.Bus.&Com.Code
Ann. § 17.50(a); see also id.
§§ 17.45(5), 17.46(b).  The elements of a
DTPA claim are:  (1) the plaintiff was a
consumer; (2) the defendant either engaged in false, misleading, or deceptive acts
(i.e., violated a specific laundry-list provision of the DTPA) or engaged in an
unconscionable action or course of action; and (3) the DTPA laundry-list
violation or unconscionable action was a producing cause of the plaintiff’s
injury.  Amstadt, 919 S.W.2d at 649; see
Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 478 (Tex. 1995).
 In our review of a DTPA claim, we must
liberally construe and apply the statute to promote the underlying goals of the
DTPA, which include protecting consumers against false, misleading, and
deceptive business practices and unconscionable actions.  See
Tex.Bus.&Com.Code Ann. § 17.44(a)(West
2012); Latham v. Castillo, 972 S.W.2d
66, 68 (Tex. 1998); Lawrence v. Kinser,
2011 WL 6318025, *3 (Tex.App.--Dallas Dec. 15, 2011, no pet.)(noting above).

We note that the
jury indicated that Cody Jackson, through due diligence, could have discovered “all
the false, misleading, unfair or deceptive acts or practices” of the Appellants
in January of 2008.  Appellants argue
that this is contrary to the weight of all of the evidence.  However, the record establishes the evidence
is conflicting.  Chapman made claims on
behalf of Cody Jackson in 2008, while Cody Jackson discovered that the bills
had not been paid in 2006.  Pursuant to Cass, we conclude that the fact finder’s
determination on this matter is conclusive.

The record before
the Court reflects that the Jacksons sought services from BSI and both desired
and required workers’ compensation coverage for Jackson Brothers and its employees,
and that BSI’s employees assured the Jacksons that they were covered by workers’
compensation.  BSI representatives
visited Cody Jackson while he was in the hospital and assured him that BSI
would “take care of [him]” and would pay his medical bills.  BSI never informed the Texas Department of
Insurance that, at the time of the accident, they did not have workers’
compensation insurance, and this failure to have the required insurance was the
reason that BSI made the claim against Great Western.  BSI, in addition to being Cody Jackson’s
employer, was also owned by the same persons who owned Transglobal, the
purported insurance carrier who was to have provided Cody Jackson with
insurance benefits.  These actions are
certainly indicative of Appellants making representations or
misrepresentations, which Cody Jackson, a “consumer” under the DTPA, could have
relied on for payment of his medical expenses. 
The record reflects that Cody Jackson’s damages include over one million
dollars in medical expenses which would have been covered by workers’ compensation
insurance which Appellants should have provided.  The judgment in favor of the Appellees for the
violations of the DTPA is not “so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.” 
Cain, 709 S.W.2d at 176.

Appellants argue
that there was insufficient legal and factual evidence to support the
percentages assigned by the jury in assessing responsibility among the
Appellants, as set out in Question Six of the charge.  Reviewing the record as a whole, including
the evidence presented showing the interrelationships between the various
Appellants and their business actions, and noting that the finding of the jury
is entitled to great deference, see
Romero v. CMA, Inc., 808 S.W.2d 157, 159 (Tex.App.--El Paso 1991, pet.
denied)(additionally noting that amount awarded for future damages is largely
left to discretion of jury), we hold that the jury’s finding in assessing
responsibility among Appellants is not “manifestly unjust.”

Appellants argue
that there is no evidence to support the jury’s answers in Question Ten
regarding whether Appellants acted “knowingly” or “intentionally.”  Again, deferring to the jury in resolving
conflicting evidence, we hold that the jury’s findings on whether Appellants’
actions were “knowing” or “intentional” are supported by the record.

Appellants assert
that there is no legal or factual evidence to support a finding of fraud.  Fraud occurs when:  (1) a party makes a material misrepresentation;
(2) with knowledge of falsity or made recklessly without any knowledge of its
truth and as a positive assertion; (3) made with intent that it be relied upon
by the other party; (4) that the party actually relied upon it; and (5) that
the party suffer injury.  Trenholm v. Ratcliff, 646 S.W.2d 927,
930 (Tex. 1983); Stone v. Lawyers Title
Insurance Corp., 554 S.W.2d 183, 185 (Tex. 1977); State National Bank of El Paso v. Farah Manufacturing Co, Inc., 678
S.W.2d 661, 681 (Tex.App.--El Paso 1984, writ dism’d by agr.); Beneficial Personnel Services of Texas, Inc.
v. Rey, 927 S.W.2d 157, 167 (Tex.App.--El Paso 1996)(noting same), judgment vacated pursuant to settlement,
938 S.W.2d 717 (Tex. 1997).  The trial
court likewise properly instructed the jury that a misrepresentation means:  (1) a false statement of fact; (2) a promise
of future performance made with intent not to perform; (3) a statement of
opinion based on a false statement of fact; or (4) an expression of opinion
that is false, made by one claiming or implying to have special knowledge of
the subject matter of the opinion.  Trenholm, 646 S.W.2d at 930; Spoljaric v. Percival Tours, Inc., 708
S.W.2d 432, 434-35 (Tex. 1986); Eagle
Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 723 (Tex. 1990); Beneficial Personnel Services, Inc., 927
S.W.2d at 167.  The trial court also
instructed that fraud can be established through nondisclosure or omission,
which may occur:  (1) when a defendant
conceals or fails to disclose a material fact within his knowledge; (2) the
defendant knows the plaintiff is ignorant of the fact and does not have an
equal opportunity to discover the truth; (3) the defendant intends to induce
the plaintiff to take some action by concealing or failing to disclose the
fact; and (4) the plaintiff suffers injury as a result of acting without
knowledge of the undisclosed fact.  Holland v. Thompson, 338 S.W.3d 586, 597
(Tex.App.--El Paso 2010, pet. denied).

Here, the jury
found that all Appellants committed fraud in relation to Cody Jackson. Appellants
again argue that because no representation was made directly to Cody Jackson,
that the jury’s finding is legally insufficient.  We disagree. 
There is support for third-party claims for fraud.  See Ernst
& Young, L.L.P. v. Pacific Mut. Life Ins. Co., 51 S.W.3d 573, 578 (Tex.
2001) (holding that intent-to-induce-reliance element of a fraud does not
depend on privity, and may be established by a “reason to expect” reliance); Burroughs v. APS Intern., Ltd., 93
S.W.3d 155, 162 (Tex.App.--Houston [14th Dist.] 2002, pet. denied)(“is
sufficient to show that the misrepresentation was intended or expected to reach
the third person and was made with the intent or expectation the third person
would rely on it.”).  Appellants’ legal
sufficiency argument as to the fraud claim is overruled.

Turning to
Appellants’ factual insufficiency claim, we hold that the record is sufficient
to support a finding that Appellants committed fraud through misrepresentation
which was expected to reach third parties, namely employees of Jackson Brothers
such as Cody Jackson.  Specifically, the
misrepresentation being that BSI maintained workers’ compensation insurance
when in fact it did not, that Jackson Brothers and its employees were ignorant
of that fact, that employees of Jackson Brothers could rely on being covered by
that insurance and would act in accordance with the belief that they were
covered, and that Cody Jackson suffered an injury as a result of acting without
this knowledge.  Viewing the record as a
whole, and deferring to the jury and its role in weighing the evidence
presented, we conclude that the record supports the factual sufficiency of the
jury finding.

The jury, in Question
Seven, was asked to determine the amounts that would compensate Cody Jackson
for his damages that resulted from the jury finding Appellants violated the
DTPA and committing fraud.  The jury
found $1,016,000 for “reasonable and necessary medical costs” for Cody Jackson’s
previous injuries; $5,000 for future injuries; and $1,161,000 for lifetime
income benefits, for a total of $2,182,000. 
Appellants assert that the evidence was legally and factually
insufficient to support the award these damages to Cody Jackson.  We disagree.

The record
reflects that medical bills indicating the amounts of Cody Jackson’s medical
expenses were introduced and testified to, including following the audit
performed by Appellants.  The record
reflects that the jury, relying on the testimony of Dr. Griswold, determined
that $5,000 was an appropriate nominal amount for future medical expenses.  The record also reflects that lifetime income
benefits are payable for compensable injuries under the Texas Workers’
Compensation Act in the event an employee suffers third degree burns on more than
40 percent of his body, payable in the amount of 75 percent of the employee’s
average weekly wage, for life.  Cody
Jackson suffered second and third-degree burns over 65-70 percent of his body.  The record indicated that Cody Jackson was
earning approximately $3,000 monthly.  We
find that the jury’s award of damages was not contrary to the weight and
preponderance of the evidence and is supported by the record.

Appellants next
argue that that there is not sufficient legal or factual evidence to support
the jury finding that Appellants Sewill, Chapman, and Bogus were each part of a
conspiracy which damaged Cody Jackson.

A civil conspiracy
is comprised of the following elements:  (1) two or more persons; (2) an object to be
accomplished; (3) a meeting of minds on the object or course of action; (4) one
or more unlawful, overt acts; and (5) damages as the proximate result.  Operation
Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.,
975 S.W.2d 546, 553 (Tex. 1998). 
Appellants again argue that conspiracy cannot be proven, in part,
because of a lack of privity with Cody Jackson.

The record
reflects, inter alia, that; Chapman
is a 25 percent owner of BSI, a 33 percent owner of LHR Incorporated, and is on
the board of Transglobal; Sewill is the president of BSI and a 33 percent owner
of LHR; Bogus is the owner of BSI Insurance Services, Inc.; that Bogus’s
address is the same as BSI’s address; Bogus issued the certificates of
liability for BSI and its customers, representing that the customers had workers’
compensation insurance coverage; because neither Transglobal or BSI is
authorized to conduct insurance business operations in Texas that Chapman,
Sewill, and Miller would, annually, drive across the border into Louisiana to
set up insurance policies for use in Texas by BSI; Transglobal is not really an
insurance company capable of paying the claim of Cody Jackson; BSI made
representations to the Jacksons and to TTUHMSC and UMHC that the medical bills
would be paid through BSI under the Texas Workers’ Compensation Act; and the
representations were made to Jackson Brothers through (1) oral promises, (2)
certificates of insurance, (3) BSI contracts, (4) the “Employer’s First Report
of Injury” prepared by BSI for Cody Jackson, and (5) letters to medical
providers and Cody Jackson.  The record
is replete with evidence sufficient for a jury to determine that the elements
of civil conspiracy were established.

Appellants argue
that the evidence was legally and factually insufficient to support the jury
awards of additional or exemplary damages in favor of Cody Jackson.

The Civil Practice
and Remedies Code requires a plaintiff seeking recovery of exemplary damages
resulting from fraud to establish the elements of fraud by clear and convincing
evidence.  Tex.Civ.Prac.&Rem.Code Ann. § 41.003(a)(1)(West Supp. 2011).
 “Clear and convincing” requires “proof
that will produce in the mind of the trier of fact a firm belief or conviction
as to the truth of the allegations sought to be established.”  Tex.Civ.Prac.&Rem.Code
Ann. § 41.001(2) (West 2008). 
The finder of fact must consider the nature of the wrong, the character
of the conduct involved, the degree of culpability of the defendant, the
situation and sensibilities of the parties involved, the extent to which the
defendant’s conduct offended a public sense of justice and propriety, and the
net worth of the defendant.  Id. § 41.011(a).  See also
Fazio v. Cypress/GR Houston I, L.P. --- S.W.3d ----, 2012 WL 159929, *20 (Tex.App.--Houston
[1st Dist.] Jan. 19, 2012, no pet.)(citing same).

Under the DTPA,
“additional damages” are allowed, up to potentially three times the amount of
actual damages,[12]
if the claimant can show that the bad actor committed the violations of the
DTPA “knowingly” or “intentionally.”  See, e.g. Texas Mut. Ins. Co. v. Sara Care
Child Care Center, Inc., 324 S.W.3d 305, 318 (Tex.App.--El Paso 2010, pet. denied).

In answering Question
Fifteen the jury found that the fraud was supported by clear and convincing
evidence.  The jury assessed additional
damages against BSI, Sewill, Chapman, and Transglobal due to their conduct
being knowing or intentional as defined in the DTPA (Question Fourteen), and
awarded exemplary damages against BSI, Sewill, Chapman, and Transglobal for the
fraud (Question Sixteen).

The evidence
outlined above was sufficient for the jury to conclude that Appellants
knowingly or intentionally created a scheme where they were purporting to offer
workers’ compensation insurance and give assurances that, in the event of an
on-the-job injury, parties like Appellees would be covered by that insurance
and would have access to the appropriate benefits thereunder.  Moreover, the evidence was sufficient such
that the jury could have concluded that Appellants knowingly or intentionally
misrepresented the terms and conditions of the contracts.  See St.
Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., Inc., 974 S.W.2d 51, 53-4
(Tex. 1998) (knowledge can be inferred when objective manifestations indicate
that the person acted with actual awareness). 
We conclude that there is factually sufficient evidence to support the
jury’s award of exemplary damages for fraud, and for additional damages under
the DTPA.

The exemplary
damages awarded in Question Sixteen do not exceed the limits set out in Tex.Civ.Prac.&Rem.Code Ann. §
41.008(b).  Therefore there is no
violation of the statutory or constitutional restraints on exemplary
damages.  Moreover, the evidence noted
above is sufficient to support the jury’s finding that there was clear and
convincing evidence of fraud and that the nature of the wrong, the degree of
culpability of the Appellants, the situations and sensibilities of the parties,
the extent to which Appellants’ conduct offended a public sense of justice and
propriety, and Appellants’ net worth all justified the imposition of exemplary
damages.

Upon review of the
entire record, we cannot conclude that the jury’s determinations in this case were
so against the “great weight and preponderance of the evidence” as to be
clearly wrong and unjust. The evidence was clear and convincing and sufficient
to justify a jury finding of fraud.  The
damages assessed, including the additional DTPA and exemplary damages, were also
supported.  We overrule Appellants’ second,
third, fourth, and fifth issues.

Errors relating to Jackson Brothers

In their sixth
issue, Appellants contend that there was no legal or factual evidence sufficient
to support a finding that BSI committed fraud against Jackson Brothers, while
their seventh issue asserts that there is legally and factually insufficient
evidence to support an award of damages to Appellee Jackson Brothers.

Jury Question Three
asked the jury to determine which Appellants, if any, committed fraud against
Jackson Brothers.  The jury answered
“yes” as to Appellant BSI only.  Question
Eight asked how much money would fairly and reasonably compensate Jackson
Brothers for the conduct of Appellant BSI. 
The jury answered $47,000. 
Question Eight also advised that the jury could consider disgorgement of
fees.

As noted above, fraud
occurs when:  (1) a party makes a
material misrepresentation; (2) with knowledge of falsity or made recklessly
without any knowledge of its truth and as a positive assertion; (3) made with
intent that it be relied upon by the other party; (4) that the party actually
relied upon it; and (5) that the party suffered injury.  Beneficial
Personnel Services, Inc., 927 S.W.2d at 167.  The trial court properly instructed the jury
that a misrepresentation means:  (1) a
false statement of fact; (2) a promise of future performance made with intent
not to perform; (3) a statement of opinion based on a false statement of fact;
or (4) an expression of opinion that is false, made by one claiming or implying
to have special knowledge of the subject matter of the opinion.  Id.  The trial court also instructed that fraud
can be established through nondisclosure or omission, which may occur:  (1) when a defendant conceals or fails to
disclose a material fact within his knowledge; (2) the defendant knows the
plaintiff is ignorant of the fact and does not have an equal opportunity to
discover the truth; (3) the defendant intends to induce the plaintiff to take
some action by concealing or failing to disclose the fact; and (4) the
plaintiff suffers injury as a result of acting without knowledge of the
undisclosed fact.  Holland, 338 S.W.3d at 597.

The record before
this Court, in addition to the evidence previously noted, reflects that the
Jacksons sought services from BSI and both desired and required workers’
compensation coverage for Jackson Brothers and its employees.  BSI’s employees assured the Jacksons that
they were covered by workers’ compensation.  BSI also advised the Jacksons that they could pay
themselves bonuses while BSI would pay minimum wage.  The Jacksons testified that if BSI had
informed them that the workers’’ compensation insurance was not procured from a
licensed Texas insurance salesman, they would not have used BSI’s services.  The record is sufficient to support a finding
that Appellants committed fraud through misrepresentation towards Jackson
Brothers.  Specifically, the
misrepresentations being that: BSI maintained workers’ compensation insurance
for Jackson Brothers when in fact it did not; Jackson Brothers and its employees
were ignorant of that fact; Jackson Brothers could rely on being covered by
that insurance and acted in accordance with the belief that they were covered;
and that Jackson Brothers suffered an injury as a result of acting without this
knowledge.  Viewing the record as a
whole, and deferring to the jury and its role in weighing the evidence
presented to it, we find the record supports the factual sufficiency of the
jury finding.  The judgment in favor of
the Appellees for fraud is not “so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.” 
Cain, 709 S.W.2d at 176.

Appellees have
tendered a voluntary remittitur in the amount of $4,000 to conform the judgment
to the record, which indicates that $43,000 was the amount paid to BSI by
Jackson Brothers for benefit and management fees for the years 2000, 2003,
2004, 2005, and 2006.  We accept the
remittitur proposed by the Appellees as being in conformity with the
record.  The evidence is sufficient to
support the jury’s finding that, as damages for the fraud committed by BSI, an
amount equal to the amount of the fees paid to BSI by Jackson Brothers, $43,000,
is an appropriate award, and is not excessive. 
Appellants’ sixth and seventh issues are overruled.

Error relating to excusing contract

            In
their eighth issue, Appellants argue that the evidence was legally insufficient
to support the finding that the Jackson Brothers’ breach of contract was
excused.  Jury Question Thirteen asked
“Was the failure to comply by Jackson Brothers Hot Oil Service excused?”  The question defined “waiver” as “an
intentional surrender of a known right or intentional conduct inconsistent with
claiming the right.”  The question also
allowed for excusal of failure to comply if all of the following occurred:  (1) BSI (a) by words or conduct made a false
representation or concealed material facts, (b) with knowledge of the facts or
with knowledge or information that would lead a reasonable person to discover
the facts, and (c) with the intention that Jackson Brothers would rely on the
false representation or concealment in acting or deciding not to act; and (2)
Jackson Brothers Hot Oil Service (a) did not know and had no means of knowing
the real facts, and (b) relied to its detriment on the false representation or
concealment of material facts.

Appellants argue
that the “existence of a valid written contract” bars Appellees’ claims and
rendered this question immaterial, that there is no evidence that BSI ever
waived its rights under the contract by either surrendering any rights or
“acting inconsistently with claiming any rights under the contract.”  We disagree. 
As supported by the record, and outlined above, the jury found that
Appellants committed fraud against Jackson Brothers.  Crediting evidence favorable to the judgment,
where the jury, as a reasonable fact finder could and disregarding contrary
evidence, and in light of the fact that the elements of fraud were met, that
there is sufficient evidence to support the jury finding an excuse for Jackson
Brothers failure to comply with the contract.  City of
Keller, 168 S.W.3d at 827.  Appellants’ eighth issue is overruled.

Failing to construe the 1999 Contract
because it was unambiguous

Appellants final
issues are a series of arguments asserting that the court committed reversible
errors of law which caused the rendition of an improper judgment.  We review determinations of legal questions
on a de novo basis.  General
Motors Acceptance Corp./Crenshaw, Dupree & Milam, L.L.P. v. Crenshaw,
Dupree & Milam, L.L.P./General Motors Acceptance Corp., 986 S.W.2d 632,
636 (Tex.App.--El Paso 1998, pet. denied), citing
In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994).  In true de
novo appellate review, the appellate court exercises its own judgment and
redetermines each issue of fact and law, giving no deference to the trial
court’s decisions.  Las Palmas Medical Center v. Moore, 349 S.W.3d 57, 66 (Tex.App.--El
Paso 2010, pet. denied).

Appellants ninth
issue asserts that the trial court erred by failing to construe the 1999
Contract as unambiguous and that the trial court should have given effect to
the intentions of the contracting parties according to the rules and principles
of contract construction.  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983).  If this case turned only on
the language of the 1999 Contract, Appellants might be correct.  However, their argument is predicated on the
assertion that this case is merely a breach of contract case.  Appellants disregard the pleadings which
allege, in addition to the breach of contract, conspiracy, fraud, DTPA violations,
violations of the Texas Insurance Code, and negligence, among other
claims.  While the action does relate to
the terms of the 1999 Contact, the scope of the matter placed before the court
and the fact finder was not limited to that alone.  Weitzel
v. Barnes, 691 S.W.2d 598, 599-600 (Tex. 1985) is a DTPA case where a
written contract was a part of the underlying DTPA action.  In Weitzel
the Texas Supreme Court noted that “[t]he oral representations, which were made
both before and after the execution of the agreement, constitute the basis of
this cause of action, so traditional contractual notions do not apply.”  Id.
at 600.  This reasoning is applicable here.  Appellees alleged DTPA violations, in
addition to the other claims.  We find no
error by the trial court in failing to construe the 1999 Contract.  See
Munawar v. Cadle Co., 2 S.W.3d 12, 19 (Tex.App.--Corpus Christi 1999, pet.
denied)(finding that because allegations of conduct which amounted to more than
mere non-performance under a contract result in court concluding that cause of
action under DTPA involves more than mere contact principles).  Appellants’ ninth issue is overruled.

Error in granting Appellee’s motion to introduce
parol evidence

In their tenth
issue, Appellants argue that the trial court erred in granting the Appellee’s
motion to introduce parol evidence. 
Appellants argue that due to the integration clauses in the 1999
Contract, the law prohibits review of extrinsic evidence in relation to the
contract.  Again, this argument is
predicated on Appellants’ view of the case as a breach of contract matter only,
and ignores the remaining claims.

Again, we turn to Weitzel, and follow the Supreme Court’s
holding that where claims are based on the DTPA, the parol evidence rule is not
applicable and therefore evidence of oral representations is admissible.  Weitzel,
691 S.W.2d at 599-600 (rejecting applicability of traditional contractual
notions, including parol evidence rule, to DTPA claims based on oral
misrepresentations made before and after execution of agreement);[13]
see also Young v. Neatherlin, 102
S.W.3d 415, 422 (Tex.App.--Houston [14th Dist.] 2003, no pet.)(same); Downs v. Seaton, 864 S.W.2d 553, 555 (Tex.App.--Tyler
1993, no pet.)(same); Mear v. West Loop
Automotive, Ltd., 2005 WL 543987, *1-2 (Tex.App.--San Antonio 2005, no pet.)(noting
same).

Appellants’ tenth
point of error is overruled.

Error in entering final judgment because
Appellees failed to properly elect remedies

Appellant’s final
issue argues that the trial court erred by entering the proposed final judgment
offered by Appellees because Appellees failed to properly elect their remedies.
 Appellants argue that Appellees
impermissibly sought to pick and choose alternate remedies based on alternate
theories of recovery among the joint defendants.  Appellants objected on the basis of the
failure to elect remedies at the trial court, asserting that Appellants were
attempting an impermissible double or multiple recovery in violation of the
one-satisfaction rule.

For breach of
contract, a party could recover economic damages and attorney’s fees, but not
mental anguish or exemplary damages.  For
fraud, a party could recover economic damages, mental anguish, and exemplary
damages, but not attorney’s fees.  For a
DTPA violation, a party could recover economic damages, mental anguish, and
attorney’s fees, but no additional damages beyond three times the economic
damages, unless an act was committed intentionally.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 304 (Tex. 2006).

The trial court entered
the final judgment on December 22, 2010 against Defendants Sewill, Chapman,
Bogus, BSI Insurance Services, Transglobal Mortgage, and LHR, jointly and severally
in favor of Cody Jackson, predicated on the jury’s findings of fraud and
conspiracy, in the amount of $1,534,902.[14]  The court further ordered that “out of and as
a part of the $1,534,902.00 actual damages” that certain named defendants were
individually and separately liable to Cody Jackson for the following amounts
predicated on the jury’s answers to the DTPA questions:  BSI Insurance Services for $537,215.70 (35
percent of the total of the actual damages, set out in Question Six);
Tranglobal Indemnity for $767,451 (50 percent of the actual damages), with
satisfaction of these amounts reducing the overall actual damage amount
owed.  The judgment awarded $700,000 in
additional damages against BSI for the DTPA claims, $37,500 in exemplary
damages against Sewill relating to the fraud cause of action, $1,000,000
against Transglobal as additional DTPA damages, and $37,500 in exemplary
damages against Chapman relating to the fraud cause of action.  The judgment awarded Jackson Brothers $47,000,
such sum being the economic damages found by the jury for the fraud committed
by BSI.

Appellees, in
their Motion to Enter Judgment, argue, without reference to authority, that there
is an “inherent inconsistency with the proportionate responsibility application
of DTPA causes of action to the consumer protection purposes of the statute,”
that the applicable law is “inherently unfair and/or unconstitutional,” and
that it “improperly requires [Appellees] to make an election concerning what
otherwise should be joint and several liability” as to Appellants.  Appellees argue that the judgment for
liability for DTPA damages and additional recovery against one Appellant, and a
different ground for recovery against separate Appellants for their commission
of fraud and exemplary damages does not violate the rules for election of
remedy, provided there is no double recovery.

The “one satisfaction”
rule is “the longstanding proposition that a plaintiff should not be
compensated twice for the same injury.”  CTTI Priesmeyer, Inc. v. K & O Ltd. P’ship,
164 S.W.3d 675, 683 (Tex.App.--Austin 2005, no pet.), citing Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 7 (Tex. 1991).
 “When a party tries a case on
alternative theories of recovery and a jury returns favorable findings on two
or more theories, the party has a right to a judgment on the theory entitling
him to the greatest or most favorable relief.” 
Boyce Iron Works, Inc. v. Sw. Bell
Tel. Co., 747 S.W.2d 785, 787 (Tex. 1988). 
The DTPA specifically limits recoveries. 
See Tex.Bus.& Com.Code Ann. § 17.43 (providing that “no
recovery shall be permitted under both this subchapter and another law of both
damages and penalties for the same act or practice.”).  See also
Gunn Infiniti, Inc. v. O’Byrne, 996 S.W.2d 854, 862 (Tex. 1999)(holding
plaintiff must elect recovery under either DTPA or fraud after remand); Holland v. Hayden, 901 S.W.2d 763, 767 n.8
(Tex.App.--Houston [14th Dist.] 1995, pet. denied)(holding that when
defendant’s negligent act and DTPA violation are both the proximate cause of
the same damages, an award of both exemplary damages and statutory treble DTPA
damages amounts to a double recovery of punitive damages).

In the instant
case the judgment combines, under a single judgment amount of $1,534,902,
recoveries for both fraud and DTPA violations, as well as awarding both
exemplary damages and additional DTPA damages. 
The jury found that Appellants had committed deceptive acts knowingly or
intentionally and found clear and convincing evidence that Appellants had
committed fraud towards Appellee Cody Jackson. 
Cody Jackson is entitled under the verdict to exemplary damages for
either fraud or violation of the DTPA.  See Tony Gullo Motors I, L.P., 212
S.W.3d at 306-07.

We will reform the judgment to reflect that
the entire $1,534,902 is for DTPA violations committed by Appellants Sewill,
Chapman, BSI, Bogus, Transglobal, Transglobal Indemnity, and LHR, who are
jointly and severally liable for the DTPA violations that were the producing
cause of injury to Cody Jackson, as supported by the jury response to question
one and question two, and as set out in the final judgment[15]  The DTPA violations were committed knowingly
or intentionally and as a result Appellee Cody Jackson is entitled to
additional damages under the DTPA against Appellants BSI, Sewill, Chapman,
Bogus and Transglobal, as set out in question ten.  The percentages of responsibility set out in
question six are supported and unmodified. 
The award of additional damages in the amount of $700,000 assessed
against BSI is allowed as additional DTPA damages, the award of additional
damages in the amount of $1,000,000 assessed against Transglobal is allowed as
additional DTPA damages, and the individual awards of $37,500 of additional
damages against Chapman and Sewill are reformed from exemplary damages for
fraud to additional damages under the DTPA.[16]  The final judgment did not award additional
damages against Bogus and that remains unchanged.

The jury found
that Appellant BSI committed fraud against Jackson Brothers.  The judgment of $47,000 against BSI for fraud
against Appellee Jackson Brothers, a separate plaintiff, is supported.  Appellants’ objection as to this part of the
judgment is overruled.

CONCLUSION

The trial court did not err in denying
Appellants’ motion for judgment notwithstanding the verdict based on
affirmative defenses.  The evidence is
both legally and factually sufficient to support the jury’s award of Deceptive
Trade Practices Act damages, actual damages, and fraud and exemplary damages as
to Appellee Cody Jackson.  There is both
legal and factual evidence sufficient to support the jury’s finding of fraud by
BSI against Appellee Jackson Brothers and sufficient evidence to support the
jury award for actual damages as to Appellee Jackson Brothers.  The evidence is both legally and factually sufficient
to support the jury’s finding that the Jackson Brothers’ breach of contract was
excused.  The trial court did not err in
failing to construe the 1999 Contract because it was unambiguous, nor did the
trial court err in granting Appellees’ motion to introduce parol evidence.  We reform the final judgment to reflect the
voluntary remittitur and to reflect recovery and additional damages based on
violations of the DTPA, and affirm the judgment of the trial court as reformed.

 

 

July 5, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J.,
Rivera, and Antcliff, JJ.











[1]
Transglobal Indemnity, Ltd., Harry Sewill, Richard Gable Chapman, Bart Bogus,
BSI Insurance Services, Inc., Transglobal Mortgage, Inc., and LHR Enterprises.

 





[2]
Cody Jackson joined the underlying lawsuit as a party-Plaintiff aligned with
Jackson Brothers and, with few exceptions, Appellees filed their pleadings
jointly on behalf of all Appellees.





[3]
A third individual was also involved in the creation of Transglobal Indemnity
but is no longer involved with that entity.

 





[4]
BSI has either been a subscriber or a nonsubscriber to certified workers’
compensation insurance since the early 1990’s. 
The decision to either procure workers’ compensation insurance through
an admitted carrier or to provide an alternative benefits program was a
business decision reserved by BSI based on current market conditions.

 





[5]
At times, Transglobal Indemnity had no
employees of its own.





[6]
BSI would, inter alia, fill out W-4
forms and I-9 forms, handle background investigations of employees, employee
applications, customize safety manuals, implement drug and alcohol policies,
deal with OSHA filings, take over all responsibilities regarding employee taxes
and FICA including payroll responsibilities and check writing, track sick and
vacation pay and benefit eligibility dates, perform job costing for payroll,
handle certified payroll for government or school districts including wage
garnishments, and acquisition of workers’ compensation, and handle audits of
workers’ compensation.





[7]
The accident occurred at a well where Jackson Brothers had been contracted by
Great Western to remove hot oil.





[8]
A cause of action under
the DTPA and a cause for conspiracy to engage in deceptive trade practices have
two-year statutes of limitations, specifically two years after the consumer
discovered, or in exercise of reasonable diligence should have discovered, the
false, misleading or deceptive act or practice. 
Tex.Bus.&Com.Code Ann.
§ 17.565 (West 2011).  Breach of contract
claims are subject to a four-year statute of limitations.  Tex.Civ.Prac.&Rem.Code
Ann. § 16.051 (West 2008).  A
cause of action for fraud has a four-year statute of limitations.  Tex.Civ.Prac.&Rem.Code
Ann. § 16.004(a)(4)(West 2002).

 





[9] Appellant cites to Via
Net v. TIG Insurance Co., 211 S.W.3d 310, 313 (Tex. 2006) in support of its
argument, however as Via Net
specifically dealt with a breach of contract, we find it distinguishable from
to the matter before us, which also involves allegations of, inter alia, fraud, DTPA violations, and
negligence, among the numerous claims.





[10]
Fraudulent concealment
defers an action’s accrual period until the plaintiff discovers or should have
discovered the deceitful conduct or facts giving rise to the cause of action.  It “requires evidence that the defendant
actually knew the plaintiff was in fact wronged, and concealed that fact to
deceive the plaintiff.”  Lozada, 323 S.W.3d at 290, citing Earle v. Ratliff, 998 S.W.2d 882, 888 (Tex. 1999).





[11]
The DTPA defines an unconscionable action or course of actions as “an act or
practice which, to a consumer's detriment, takes advantage of the lack of
knowledge, ability, experience, or capacity of the consumer to a grossly unfair
degree.”  Tex.Bus.&Com.Code Ann. § 17.45(5).





[12]
See Tex.Bus.&Com.Code
Ann. §17.50(b)(1)(West 2011).





[13]
We
note the comments made by the Dallas court of appeals regarding the Weitzel holding:

In
other words, the Supreme Court recognized that contractual liability and
liability under the DTPA derive from two different sources. Contractual
liability turns solely on the agreement of the parties whereas liability under
the DTPA springs from the statute.  As a
general proposition, liability under the DTPA is neither increased nor
diminished by the presence of a formal written contract covering the identical
subject matter.

Unlike
contractual liability, resulting from the voluntary agreement of the parties,
liability for false, misleading and deceptive acts is provided by the
legislature for the breach of a duty imposed by it.  These duties cannot be altered by the
agreement of the parties. To apply the parol evidence rule in DTPA cases would
frustrate the legislature’s purpose in passing the statute without furthering
the objectives of the parol evidence rule.

 

Honeywell, Inc.
v. Imperial Condominium Ass’n, Inc., 716 S.W.2d 75, 78 (Tex.App.--Dallas
1986, no pet.)[Citations omitted].

 





[14]
This amount reflects a $635,000 settlement credit allowed for settlement paid
by Great Western.





[15]
The judgment provides for specific liability for BSI and Transglobal Indemnity,
which are not altered by this opinion.

 





[16]
In light of the forgoing, Appellants’ Motion to Correct Judgment has been
rendered moot.