**AFFIRMED and Opinion Filed August 24, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00032-CV

**PRIME UNITED PETROLEUM HOLDING CO., LLC, Appellant**
**V.**
**MALAMEEL, LLC & MARK ALAMEEL, INDIVIDUALLY, Appellees**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-07898**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Carlyle
Opinion by Justice Reichek

Prime United Petroleum Holding Co., LLC appeals the trial's order granting summary judgment against it and dismissing its fraud claim against Malameel, LLC and Mark Alameel, individually. In three issues, Prime challenges the trial court's determination that the statute of limitations had expired by the time the lawsuit was filed. In a fourth issue, Prime complains the trial court erred by not allowing it to supplement its argument before ruling on the summary judgment motion. For reasons set out below, we overrule all issues and affirm the trial court's order.

FACTUAL BACKGROUND

In December 2014, Mark Alameel, owner of Malameel, LLC, contacted Alex Zidan, owner and manager of Prime (collectively "Prime), about investing in a 3D camera-based technology that was "unlike anything on the market." Alameel sought $120,000 to fund the creation of a functional, scalable prototype, and Prime agreed to provide $15,000 in funding at the first of every month until the $120,000 target was met. Prime told Alameel that it would need a written contract setting out the "responsibilities and expectations" prior to funding, but Alameel insisted that Prime provide funding right away or they would lose their "inventor." Alameel explained that because they could be the first on the market with the technology, Prime could make "an exponential profit" on its money. But, Alameel also said that if for any reason the venture was not successful, Prime's investment money would be returned. Prime deposited money the next day with a "mutual understanding" that a contract would be created detailing the project.

Prime said that thereafter Alameel continually delayed creation of the contract and also refused to account for how Prime's money was being spent. Consequently, in February 2015, Prime requested a meeting of the "involved parties." The meeting was held on February 20 and, among others, was attended by the inventor of the technology ("Jay"), Alameel, and Prime. By this time, Prime had invested about $49,000 but learned at the meeting that only $20,000 had been directed to Jay to

develop "the deliverable." Two days later, Prime sent Alameel an Excel spreadsheet to list expenditures through that date, but Alameel did not respond.

Over the next several weeks, the parties exchanged lengthy emails regarding their business relationship, proposed terms of a written contract, Alameel's offers of a guarantee to repay the investment under certain conditions, and Prime's frustrations with Alameel and intent to pull out of the company. Finally, on March 26, Prime sent an email stating that the "process" for coming to terms for the contract had taken "far too long" and complained that the terms "keep changing constantly on a daily basis." Prime notified Alameel that until terms could be reached, "all funding was on hold," and if the parties could not agree on the matter, Prime would have to "request withdrawal from the project and reimbursement of all funding submitted to date." Prime further stated that return of the funds would "start immediately" and be structured in the same timeline that the funds were originally provided. Five days later, on April 1, Prime "specified" to Alameel that it wanted its investment money returned. In an April 2 email, Alameel said he would pay back the $60,000 investment "ASAP" via "a new investor." The money was not repaid.

More than four years later, on May 31, 2019, Prime sued appellees for fraud, alleging that that Alameel had "embezzled" $40,000 of the money it invested in the

–3–

project.[1]  Prime alleged appellees took the funds and never intended to produce "the deliverable" for which the funds were invested.  As damages, Prime sought the recovery of the "cash out of pocket" amount of $60,694.20 and losses due to the diversion of his funds.

Appellees filed an answer raising several defenses, including the statute of limitations, and filed a motion for summary judgment asserting the limitations defense.  Relying on the March emails, appellees asserted that Prime knew no later than March 2015 of its legal injury (the misappropriation of money) and thus limitations had run by the time the lawsuit was filed in May 2019.

The summary judgment hearing was set more than two months later.  Seven days before the summary judgment hearing, Prime filed its second amended petition, alleging for the first time that Alameel had induced Prime to continue to invest and stay with the project.  Prime asserted Alameel made a personal guarantee to repay Prime ninety-days after a request for a refund, but when repayment was to begin, Alameel failed to do so.  Likewise, in its response to the summary judgment motion, Prime asserted Alameel made a promise to begin repaying the money ninety days after a request by Prime.  Thus, Prime asserted that its fraud cause of action did not accrue (because no injury had occurred) until ninety days after it requested

---

[1] The original petition also named Zidan as a plaintiff and included causes of action for statutory fraud and common law theft.  Prime ultimately amended its petition to drop Zidan as a plaintiff and all causes of action except for fraud.

repayment, or July 1, 2015, which was less than four years after it filed its original petition.

As evidence of its ninety-day assertion, Prime relied on a February 24, 2015 email from Alameel to Zidan, Zidan's brother, and the attorney who was working on the parties' contract. That email, in relevant part, stated as follows:

> Further, Mark [Alameel][2] offered a personal guarantee to Alex [Zidan]: If by June, we do not create a prototype, and Alex feels that we cannot achieve the prototype (we will go in writing as to the state of the company), he may choose to pull out of the project and I'll be personally liable to return his $120K, to be paid back in the order it was received. As a stipulation for the investment, Alex may keep his 12% of the company.
>
> \*\*\*
>
> Note: If Alex does pull out, I did originally say we would start to repay in 30 days, *but I ask that you extend this to at least 90 days* or some other requirement so we have the chance to find another investor, do the paperwork, and get his funding. Our goal would be to get him to pay off our investment which would also mean your 12% would become much more valuable; the ultimate end goal. We also cannot accept any additional penalties that'd make it harder to find a new investor.

(Emphasis added.)

In their reply to Prime's response, appellees argued, in part, that Prime's "cherry-picked excerpt" from a single email was insufficient to raise a fact issue and required the court to "ignore the clear context of the communication." Appellees asserted the language was a request from Alameel to the attorney to "come up with

---

[2] Alameel refers to himself in the third party in this email.

alternative language in a draft contract to which Prime was not a party." Appellees asserted no contract was ever signed, Prime admitted no contract was ever signed in its live pleading, and there is no evidence that terms were ever agreed upon. As additional evidence, appellees directed the trial court to an excerpt of an email two days later from Prime's attorney advising the parties that they needed to "figure out the ramifications" if Prime did not "fully fund" the project, agree to what that term meant, and "to lay out default/remedies/breach for not 'fully funding.'"

The trial court granted appellees' motion for summary judgment and dismissed Prime's claims. In its order, the trial court specifically determined that appellees produced conclusive evidence that (1) on April 1, 2015, Prime knew or should have known of the alleged legal injuries about which it complained, including fraud and (2) on April 27, 2015, Prime was aware that appellees had hired legal counsel to defend against the claims brought by Prime in this suit and, thus, as of that date, Prime knew or should have known of its alleged legal injuries. Additionally, the court determined that appellees conclusively established their limitations defense; Prime failed to present sufficient evidence to rebut the defense; and the petition filed on May 31, 2019 was outside the statute of limitations for fraud. After its motion for new trial was overruled by operation of law, Prime filed this appeal.

APPLICABLE LAW

–6–

We review a grant of summary judgment de novo.  *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).  A party moving for traditional summary judgment has the burden to prove there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985).  If the moving party produces evidence entitling it to summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.  *Nixon*, 690 S.W.2d at 548–49.  Every reasonable inference must be indulged in the nonmovant's favor, and any doubts must be resolved in the nonmovant's favor.  *Id*.  When, as here, the trial court grants summary judgment on a specific ground, we generally limit our consideration on appeal to the ground on which the trial court relied.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625–26 (Tex. 1996) (citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993) (plurality op.)); *Headington Royalty, Inc. v. Finley Resources, Inc.*, 623 S.W.3d 480, 489 (Tex. App.—Dallas 2021, no pet. h.).

Prime does not dispute that its fraud claims are governed by the four-year statute of limitations.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(4); *see Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 216 (Tex. 2011).  The

limitations period begins to run when the claim accrues; generally, "a claim accrues when facts come into existence that authorize a claimant to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." *LaTouche v. Perry Homes, LLC*, 606 S.W.3d 878, 883 (Tex. App.—Houston [14 Dist.] 2020, pet. denied).

A cause of action for fraud accrues on the date the fraud is perpetrated, i.e., when the defendant makes the allegedly false representation. *Hoover v. Gregory*, 835 S.W.2d 668, 676 (Tex. App.—Dallas 1992, writ denied); *Fuller v. Le Brun*, 616 S.W.3d 31, 43 (Tex. App.—Houston [14 Dist.] 2020, pet. filed). But if the fraud is concealed, "[t]he statute of limitations for fraud begins to run from the time the party knew of the misrepresentation." *Exxon Corp.*, 348 S.W.3d at 216; *Fuller*, 616 S.W.3d at 43.

## ANALYSIS

In its first three issues, Prime asks us to resolve the following: (1) whether the trial court erred in finding that Prime knew on April 1, 2015 of Prime's legal injuries, including fraud, (2) whether the underlying matter was ripe on April 27, 2015, and (3) whether there are any material fact issues to controvert a finding that the statute of limitations expired before suit was filed on May 31, 2019.

In this appeal, Prime asserts that its fraud/fraudulent inducement cause of action is not for a misappropriation of funds, but is based upon appellees' alleged fraudulent promise to repay all investment funds to Prime ninety days after a refund

–8–

was requested. Prime contends that Prime pulled out of the project and requested the return of its investment money on April 1, 2015, which triggered the first payment on July 1, 2015, giving it four years from that date to file suit. Prime argues that its cause of action did not, and could not, accrue until no payment was made after the ninety-day period lapsed because, until that time, no injury had occurred and the claim was not ripe.[3] Thus, it argues the cause of action accrued no earlier than July 1, 2015, and its lawsuit filed less than four years later was timely.

Prime's three issues are all dependent on its argument that it was fraudulently induced to believe that repayment would begin ninety days after a refund was requested. As evidence of its assertion, Prime relies on the February 24 email in which Alameel stated that he "did originally say we would start to repay in 30 days, but I ask that you extend this to at least 90 days or some other requirement so we have the chance to find another investor, do the paperwork, and get his funding." Even indulging every inference in Prime's favor, as we are required to do on summary judgment review, Alameel's *request* to extend the time to ninety days by itself is simply not a representation, promise, or an agreement that would extend the accrual of the cause of action. *See Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 291 (Tex. App.—El Paso 2010, no pet.) ("A promise is a declaration that binds the person who makes it to act or refrain from acting in a particular way.");

---

[3] Prime specifically asserts the discovery rule does not apply, explaining it was "intimately aware of its' [sic] cause of action," which it argues did not accrue until payment was not remitted.

*HomeAdvisor, Inc. v. Waddell*, No. 05-19-00669-CV, 2020 WL 2988565, at *3 (Tex. App.—Dallas June 4, 2020, no pet.) (binding contract requires, among other things, both offer and acceptance of offer in strict compliance with terms). Certainly, Alameel's request is not a binding declaration. And Prime has cited us to no evidence, and we have found none, that Prime ever agreed to Alameel's request to extend the repayment date by ninety days. To the contrary, the March 26, 2015 email, sent one month after the email upon which Prime relies, shows that Prime expected Alameel to begin repaying the money immediately. At best, the evidence shows that Alameel represented that he would begin repayment thirty days after a request for refund was made. Prime does not dispute that its request for repayment was made on April 1, 2015, meaning the cause of action accrued on May 1, 2015 and limitations expired four years later, on May 1, 2019. Given that the petition was filed on May 19, 2019, we conclude Prime has failed to raise a fact issue as to whether Prime's cause of action was filed within the limitations period. We overrule issues one through three.

In its fourth issue, Prime asserts the trial court erred by granting appellees' motion for summary judgment "after allowing [a]ppellees to supplement their argument, but not allowing [Prime] to supplement its argument prior to the Court ruling on the motion."

Prime cites no authority to support its issue. "The failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide

authorities and record citations, waives an error on appeal." *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.). Because Prime has cited no legal authority, we conclude it has waived the issue.

Even if the issue was not waived, no error is shown. During the summary judgment hearing, appellees responded to the 90-day argument but could not readily locate pinpoint citations supporting their position. The trial court told appellees that they could "submit the additional information that you are trying to find in the record." Appellees did not object or request time to respond.

Shortly after the hearing and on the same day, appellees filed a supplemental brief setting out those citations  Two hours later, Prime filed a motion for leave to file a supplemental brief. The trial court ruled on the summary judgment motion on the same day. The order is not time-stamped, so it is not clear whether the two documents were filed before or after the trial court signed its order. Regardless, in the order, the court stated it relied on the motion, response, the reply, the evidence for which no objection was sustained, and the arguments of counsel; the order did not identify appellees' supplemental brief as something it considered. Consequently, appellees cannot show reversible error. *See* TEX. R. APP. P. 44.1. We overrule the fourth issue.

We affirm the trial court's judgment.


        /Amanda L. Reichek/
        AMANDA L. REICHEK
        JUSTICE

200032F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PRIME UNITED PETROLEUM
HOLDING COMPANY, LLC.,
Appellant

No. 05-20-00032-CV        V.

MALAMEEL, LLC & MARK
ALAMEEL, INDIVIDUALLY,
Appellees

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-07898.
Opinion delivered by Justice
Reichek; Justices Schenck and
Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's Order Granting Defendants' Motion For Summary Judgment is **AFFIRMED**.

It is **ORDERED** that appellees MALAMEEL, LLC & MARK ALAMEEL, INDIVIDUALLY, recover their costs of this appeal from appellant PRIME UNITED PETROLEUM HOLDING COMPANY, LLC.

Judgment entered August 24, 2021.